## FAVILLE vs. GREENE.

A complaint, under what is commonly called the "Mill Dam Act," alleged that the plaintiff was, and for more than three years had been, the owner in fee, and actually possessed of certain lands therein described; that during all that time, he had the right to the use and profits of said land; that the defendant, for more than three years last past, had kept up and maintained, across a stream (not navigable,) a mill dam, to raise the water for working a grist mill, &c., by means whereof the water of said stream had, during all that time, been caused to set back upon and overflow the said land, and deprive the plaintiff of the use thereof, which was of the value of $350 per year, and demanded judgment, that said damages be assessed under the provisions of the statute, &c.: *Held*, that the complaint showed a good cause of action.

APPEAL from the Circuit Court of *Jefferson* County.

This was an action under what is commonly called the "Mill Dam Act," commenced in 1859. The complaint alleges that the plaintiff is, and ever since the 4th of June, 1855, has been, the owner in fee, and actually possessed of certain land therein described, and, during all that time, has had the right to the use and profits of said land; that the defendant, for more than three years last past, has kept up and maintained, across a stream (not navigable,) a mill dam, to raise the water for working a grist mill, &c., by means whereof the water of said stream has, during all that time

been obstructed and caused to set back upon and overflow the said land, and deprive the plaintiff of the use thereof, which was of the value of $350 per year, and make it valueless; wherefore the plaintiff demands judgment, that the damages he has already sustained in the premises be assessed, under the provisions of the statute, and also for all damages which may hereafter be occasioned to the premises in consequence of such flowage.

Demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action, and specifying the following objections:

1. It does not show that any of said plaintiff's land is overflowed, which was not flowed before the erection of said dam. 2. It does not show that said land, so overflowed, was of any value before the erection of said dam, or that the same would be of any greater value than now, if said water was off. 3. It does not show that said dam caused the waters of said river to overflow its banks, or flow out of its natural bed. 4. It does not show that no compensation has been made for the damages caused by said flowing. 5. It does not show that the height to which the defendant might raise the water by said dam, has not been settled by contract or otherwise. 6. It does not show that defendant had wrongfully erected or maintained said dam, or caused said land to be overflowed, nor but that he had a perfect right to do so, without paying damages to the plaintiff on account thereof. 7. It does not show when said dam was erected. 8. It does not show whether or not plaintiff's land was so overflowed when he acquired title, nor but that he purchased the same subject to defendant's right to overflow the part now alleged to be overflowed. 9. It does not show that defendant has ever had any notice that said dam caused said water to overflow the plaintiff's land, nor that the plaintiff sustained any damage on account thereof. 10. It does not show that defendant has been requested to take said water off from said land, or to make compensation to plaintiff for damages. 11. It does not show that plaintiff has sustained damages, by reason of the maintenance of said dam, over and above the benefits to him occasioned by said dam. 12. No civil action can be

maintained against a party for flowing land, upon such facts as are stated in said complaint.

The circuit court overruled said demurrer, and from the order overruling the same, the defendant appealed.

*Gill, Barber and Fribert*, for appellant:

The plaintiff is not entitled to compensation for injury done his land by the overflowing of the water, caused by the dam, because it does not appear by the complaint, that he was the owner of the flowed land, when it was first over-flowed, that is, when the dam was erected; and unless he was the owner at that time, he has sustained no injury, has had no property taken from him, and hence is not entitled to compensation. This court has sustained the constitution-ality of the present mill dam law, solely upon the theory that the flowing of land by the erection of a mill dam, is taking private property for public use. 1 Chand., 71; 3 Wis., 461; 3 id., 603. The taking is complete when the dam is erected and the land first flowed, and the rights of the owner to so much land as is flowed, are thereby divested, and he, in lieu thereof, has a claim against the taker, (the mill dam owner,) for compensation, which is but a *chose in action*, in the nature of a claim for purchase money; and if he dies before it is paid, it will belong to his personal repre-sentatives, and not to the heir; and the measure of damages in such cases, is the depreciation in the market value of the land at the time of the taking. It follows, that no one but the owner of the land at the time it is taken for public use, can recover compensation, for he alone has sustained the in-jury, and his grantee takes subject to a privilege, or ease-ment, which, in judgment of law, may be coextensive with and permanent as the land itself. 8 Cushing, 278; 4 Cush-ing, 469; 7 Met., 78; 5 Met., 81; 2 Met., 558; 12 Pick., 482; 7 Serg. & Rawle, 420; *Turnpike road vs. Brosi*, 22 Penn. State Rep., 32; *Reese vs. Adams*, 16 Serg. & Rawle, 40; *Zim-merman vs. the Union Canal Company*, 1 Watts & Serg., 354.

*Enos & Hall*, for respondent:

The statute indicates what the complaint should contain, and the complaint in this case complies with its requirements. "The flowing of land by a mill owner is not a disseisin of

the owner of the land; and therefore, if such flowed land is conveyed by the owner, the grantee may maintain a complaint against the mill owner for damage done by such flowing." *Charles vs. The Monson & Brimfield Manuf. Co.*, 17 Pick., 70.

June 4.

*By the Court*, COLE, J. This was an action commenced under chapter 56, R. S., for damages sustained by the flowing of the lands of the respondent. The appellant demurred to the complaint, assigning several grounds of demurrer, which we do not deem it necessary to notice in detail. It appears to us that all the serious objections taken to the complaint, are substantially embraced in the position, that it is not alleged that the respondent was the owner of the land overflowed when the dam was erected, or that no compensation has been made for the injury caused by the flowing. An examination of the complaint clearly shows that it sets forth a good cause of action. It avers, in substance, that the respondent is now, and ever since the 4th day of June, 1855, has been *the owner in fee*, and actually possessed of certain lands therein described; that ever since that day, and until the present time, he has had the right to the use and profits thereof; that the appellant now, and for more than three years past, has kept up and maintained the dam which has caused the waters to flow back on the lands mentioned in the complaint, whereby he has been deprived of the use of said lands, and the same have become valueless, &c. He demands judgment, that the damages he has already sustained in the premises be assessed under the provisions of the statute, and also for compensation for all damages which may hereafter be occasioned to the premises forever, in consequence of such flowage.

We do not suppose that it is essential to a complaint of this kind, to negative every possible defense which may exist to the action, and therefore, it was not necessary for the respondent to allege that no compensation had been made for the injury sustained. If compensation had been made, it was a proper matter of defense, and would properly be set up in an answer to the complaint.

Again, it is insisted that the complaint is defective because it does not allege that the respondent was the owner of the land when the dam was erected. It is said, in support of this objection, that the flowing of land by the erection of a mill dam, is taking private property for public use; that the taking is complete when the land is first flowed, and that the rights of the then owner to so much land as is flowed, are thereby divested, and in lieu of the estate taken, he has a claim against the mill dam owner 'for compensation in the nature of a claim for purchase money; and therefore, unless the respondent was the owner of the land when it was first overflowed, it is contended that he has sustained no injury, has had no property taken from him, and is entitled to no compensation.

It does not become necessary to determine, in this case, the question as to whether the owner of land at the time it is flowed, can alone maintain an action, not only for damages already sustained, but also for damages which may subsequently accrue, after its alienation, by reason of keeping up the dam. It is very obvious that the statute has in view two objects: to give a remedy for damages already sustained, and an estimate of the damages, gross or annual, which may afterwards be incurred. In the case of *Walker vs. The Oxford Woolen Manufacturing Co.*, 10 Met., 203, it was held, that if an owner of land that is flowed by a mill dam, sells and conveys the land before he has proceeded against the mill owner for damages, he may afterwards maintain an action under the statute, and have a jury to assess the damages caused by the flowing of the land *whilst he owned it.* And in *Charles et al. vs. The Monson & Brimfield Manufacturing Co.*, 17 Pick., 70, it was held, that the former owner of a mill is liable for damages occasioned by flowing land while he was the owner of the mill, although at the time when the complaint was filed he had ceased to be the owner and occupant thereof. But in neither of the above cases did it become necessary to decide the precise question discussed upon this demurrer, namely, whether a grantee of land flowed, could maintain an action for damages sustained by him after he purchased the estate. See *Hathorn vs. Stinson et al.*, 1 Fair-

field R. (Me.,) 224; *Preble vs. Reed*, 5 Shep., 169. If, however, the proposition insisted upon by the counsel for the appellant be sound, that the owner of the land at the time it is flowed, can alone recover for past and future damages, and that his grantee takes the property subject to the easement, then it is very evident that such grantee has no right to the profits and use of the land overflowed. Here the respondent alleges, not only that he is the owner in fee, and actually possessed of the land, but further, that he is entitled to the use and profits of the same. By the demurrer it is admitted that this allegation is true, which wholly negatives and rebuts the presumption, that the respondent took the lands overflowed subject to any easement whatever. If it be true that the taking is complete when the land is first overflowed, and that the rights of the then owner to so much land as is overflowed, are thereby divested, then it is very clear, in view of the allegations of the complaint, that the respondent must have been the owner of the land when the dam was erected. But as the question as to whether a subsequent purchaser can maintain an action under the statute for damages sustained by him for keeping up a dam after he became possessed of the land overflowed, even though the dam was erected before he purchased the property, is not fairly raised by this demurrer, it will not be decided, or further noticed.

We are of the opinion that the complaint set forth a good cause of action, and that the demurrer was properly overruled.

The order overruling the demurrer is affirmed.