NEWELL
v.
SMITH et al.

NEWELL VS. SMITH and others.

15 101
104 56

An act of the legislature authorizing proprietors of a mill dam to flow lands of other persons, without any provision for compensation except that they should pay the land owners the value of the land, to be ascertained by the verdict in an action of trespass, is in violation of that section of the constitution which forbids the taking of private property for public use without making compensation therefor.

15 101
59 LRA 902n

A person who purchases land *already* flowed in consequence of a dam, and for which no compensation in gross has ever been made, may recover for injury done to the land by the maintenance of the dam *after* he purchased the estate.

The complaint in this case *held* sufficient under the mill dam law.

APPEAL from the Circuit Court for *Rock* County.

The complaint in this case, after reciting the material provisions of the acts of February 21, 1848, and February 9, 1850, (which are stated in the opinion of the court), alleged that in the summer of 1857, the defendants erected and completed a stone dam across Rock river at the place mentioned in said acts, which caused three pieces of land described in the complaint, to be overflowed and rendered worthless; that at the time said dam was erected, the plaintiff was the owner of a mortgage covering two of said pieces, and subsequently became the owner of a mortgage covering the other piece, which last mentioned mortgage was executed after said dam was built; that each mortgage covered also other lands (not alleged to have been flowed); that both of said mortgages were foreclosed, and the plaintiff purchased the mortgaged premises (including the lands which were flowed) at the foreclosure sale on the 26th of September, 1860, and that ever since said purchase, said three pieces of land have been flowed in consequence of said dam, and rendered valueless, to the plaintiff's damage $5000; wherefore he demanded that the value of said land might be ascertained by the verdict

of a jury in this action, and that he might have such judg-ment or relief as he might be entitled to.

NEWELL
v.
TH et al.

A demurrer to the complaint was sustained *pro forma.*

*J. A. Sleeper,* for appellant,

*Sloan, Patten & Bailey,* for respondents :

1. The plaintiff cannot recover, because he was not the *owner* of the lands at the time the dam was built and the lands flowed, and did not acquire any title to the lands under the foreclosure sales. A mortgagee is not the *owner* of the mortgaged lands. 14 Kent's Com., 160; 4 Johns., 41; 6 id., 290; 7 id., 27; 1 Caines' Cas., 471, and by virtue of the act referred to in the complaint, the fee of the lands flowed passed to the proprietor of the dam as soon as the dam was completed, and a right of action to recover their *value* vested in the "owner." If the fee passed, it must have passed as well against the mortgagee as the owner, and if the security would have been rendered insufficient by allowing the owner to receive the value of the land, equity might have interposed to protect the mortgagee's interest. In *Breed vs. Eastern R. R. Co.,* 5 Gray, 470, note, it was held that notwithstanding there were several mortgages on the estate, the owner was entitled to damages to same extent, as though no mortgage existed. In this case it is to be presumed that the lands *not* flowed brought enough to satisfy the decrees. If they did, the plaintiff has no claim as mortgagee; if they did not, that fact should have been stated in the complaint. But the plaintiff sues as "owner," not as mortgagee, and the question is, whether the conveyance of the land to him under the foreclosure sales in September, 1860, also conveyed the righ of action to recover the value of the land. The complaint shows that this right was in the mortgagors, who might have maintained the action at any time before the sales were confirmed. Until then the purchaser had no right of possession. The sheriff's deeds conveyed no greater right than deeds from the mortgagors would have done, and a right of action for an injury to lands does not pass by a conveyance of the lands. 4 Kent's, Com., 471, and cases cited in note; 2 Hilliard on R. Est., 341, and note 3. Counsel cited also 8 Cush., 247;

2 Met., 521; 1 Fairfield, 224; 5 Shep., 169; 13 Barb., 646.

January Term, 1862.

NEWELL
v.
SMITH et al.

May 15.

*By the Court*, COLE, J.  When this cause was reached in the consultation room, it was examined and decided upon the oral argument of the counsel for the appellant and the printed argument on file.  We then understood that it was conceded  on both sides that the action was brought and must be sustained under the provisions of the act of the territorial  legislature  referred  to  in  the  complaint, with the amendment thereto found  in chapter 214,  p.  170, Laws of 1850.  The complaint  evidently  grounds  the  action  upon that law.  But in considering  the  case,  we  found an insurmountable difficulty in sustaining the action under that law, because we deemed  it an  unconstitutional  enactment,  for reasons which will be presently stated.  The  question  then arose, whether the complaint  could be  sustained under  the general mill dam law ;  and we  came to  the conclusion  that it could, although in this view it is clear that  there is much redundant matter in the complaint.   We now find upon file a written argument of the counsel for the appellant, in which he seems to have reached substantially the same  conclusion as to the validity of the law of 1848 as amended, and as  to the  nature of his  complaint, as  the one  to which the  court had arrived.   The law of 1848 (p. 13, Laws of 1848,) was evidently  designed to, and  in  terms  does  grant to  *A. Hyatt Smith, Ira Miltimore* and  their  associates  &c.,  the  right  to erect and maintain  a  dam  across  Rock  river, at any  point they might deem most suitable *on their own land*, and according to the conditions  therein  prescribed.   But it  expressly limits this right to the  flowage of such  lands only  as  they, or either of them,  might own.   The reason of the  law  undoubtedly was, that as that river was supposed to be a navigable stream, they would have no right to erect and maintain such a dam, even on their own lands, without a previous act of  the  legislature.   Hence  the  necessity  of  that  law.   In 1850 the legislature attempted to give  them the  right to  so construct the  dam as  not only  to  flow their own  lands  but the lands of others.   The material part of the law is embrac-

ed in the proviso, which reads: "That in the event that such dam shall cause the water to flow back on any lands not owned by them, or either of them, then they shall pay to the owner or owners thereof such sum as such land may be reasonably worth, such value to be ascertained by the verdict of a jury in an action of trespass to be brought in any court of record."

We do not know upon what principle of law, reason or justice, such an enactment of the legislature, under the constitution of this state, can be sustained. Within repeated decisions of this court, it is clearly unconstitutional and void. It professes to authorize the respondents to overflow, use, enjoy, and practically destroy the value of lands of an individual, without first making compensation therefor. The only compensation in fact given by the law, is an action of trespass against the respondents for the value of the lands overflowed. It is not readily perceived how an action of trespass for the permanent use and enjoyment of land places the owner in any better condition for the redress of his injury than he would have been at common law. At all events, an action of trespass for the permanent use and enjoyment of private property is not just compensation therefor, either in a constitutional sense or any other.

It is true we have quite recently affirmed the constitutionality of the mill dam law. But we did so upon the distinct ground and for the express reason, that its validity had been sustained by previous decisions of this court, and we did not feel at liberty, under the circumstances, to depart from those decisions. We acted upon the principle of *stare decisis*, through our own opinions were in conflict with the doctrine of those cases. As an original question, we should be unwilling to declare that the taking of property for the purpose of overflow by the waters of a mill dam was taking it for a "*public use.*" By the adjudications of this court it has been settled that it was. We have no intention of unsettling and overthrowing those decisions. At the same time we are as little disposed to extend the principles and scope of those decisions to cases which do not fairly come within them. There is a wide and fundamental distinction in respect to

January Term, 1862.

NEWELL
v.
SMITH et al.

providing the means of compensation, between the general mill dam law and the above proviso. It is true, both turn the injured party over to his action at law. But in the one case the owner of the land overflowed obtains a personal judgment. In the other, the judgment is made a lien "from the time of the institution of the original complaint, on the mill and mill dam, with their appurtenances, and the land under and adjoining the same and used therewith." There are other material differences between the two laws, not necessary now to be noticed. It is sufficient now to say that by no fair application of legal principles can the law of 1848, as amended by that of 1850, come within the decisions under the mill dam law. The foundation for all remedies or actions under the law mentioned in the complaint, therefore, falls to the ground.

Although the mill dam law was repealed by the revision of 1849, it was re-enacted in the spring of 1857. In the summer of that year the complaint alleges that the respondents increased the height of their dam so as to cause the water of the river to set back and overflow the lands purchased by the appellant under the foreclosure proceedings. It alleges that in consequence of this overflowage, those lands are rendered wet, marshy and wholly worthless, and that the damage sustained by reason thereof is five thousand dollars. This is the material part of the complaint, and we think it sates facts constituting a cause of action under the mill dam law. In the view we have taken of the complaint, it is apparent it contains immaterial allegations; but this is not a ground of demurrer. It further appears from the complaint, that the appellant became the absolute owner of the three tracts of land therein mentioned, in September, 1860. For some four years before that time, he had held a mortgage on two of the tracts, to secure the consideration money of these with other lands sold to David Noggle in March, 1856. He became likewise assignee of a mortgage on the other tract in 1859. The question is therefore distinctly presented on this demurrer, whether the appellant, having purchased land already flowed, and for which no compensation in gross had ever been made to the former owner, can maintain an action

January Term, for damages sustained by him after he purchased the estate.
1862.      And we are of the opinion that he can.   But we shall not
VIBBERT    enter upon the discussion of that question at length now.
v.         The appellant has become the absolute owner of the prop-
SHEPARD.   erty under the foreclosure suit, and the injury to the land is
in the nature of a continuing trespass, for which he ought to
receive such compensation in damages as he may have sus-
tained.   See *Faville v. Greene,* 12 Wis., 11; 17 Pick., 70.

The order sustaining the demurrer must be reversed, and
the cause remanded for further proceedings according to law.