COBB and another vs. SMITH and others.

Where S and others were authorized by an act of the territorial legislature to erect and maintain a dam across Rock river, provided they did not flow any lands or water privileges they did not own, and subsequently the proviso was repealed and they were allowed to flow the lands of others, but there were no means provided for such owners to obtain compensation. In an action by one whose lands were flowed by reason of the dam, to abate it as a nuisance and for an injunction to prevent its being maintained. *Held*, 1. That Rock river is a navigable stream, and that the act allowing S and others to build and maintain such dam, and make use of, lease or sell the water power created thereby under said proviso, is a valid act, and the dam to that extent lawful.

2. That the general mill dam law is not applicable to cases where dams are built across navigable streams.

Cobb et al. vs. Smith et al.

3. That as the amendatory act allowing S and others to flow lands they did not own was unconstitutional, for the reason that it did not provide any method of making compensation to the owners of lands flowed, such owners are entitled to their common law rights and remedies.

The case of *Newell vs. Smith*, 15 Wis., 101, so far as it holds that the provisions of the general mill dam law apply to dams erected across navigable streams is overruled.

Where the lands of C were flowed by reason of a dam erected across a stream, in a case where the rights and remedies of the parties remained as at common law, and he suffered the owners of the dam to build, maintain and repair it from time to time for a period of more than ten years, during which time they made valuable and permanent improvements in mills, &c., and drew water from the dam to propel them. *Held*, That by such acquiescence in the claim asserted by them, he would be precluded from maintaining an action to abate the dam as a nuisance and for an injunction to restrain them from rebuilding and maintaining it, when it had been partially destroyed by a flood, and that he must resort to his common law action for damages.

The granting or refusing an injunction rests in the sound discretion of the court, and it will not be granted where it would be against good conscience, or productive of hardship or private or public mischief.

Past injuries are in themselves no ground for an injunction, and it will only be granted when necessary to restrain irreparable mischief, suppress oppressive and interminable litigation, or prevent a multiplicity of suits.

APPEAL from the Circuit Court for *Rock* County.

Action to obtain a judgment declaring a certain dam on Rock river a nuisance, and that it be abated, and for a perpetual injunction restraining the defendants from re-building the same, and from re-building or repairing a certain wing dam on said river, or obstructing the flow of water in the river. The material allegations of the complaint appear from the opinion of the court, and it is substantially like that in the case of *Newell vs. Smith*, 15 Wis., 101, except that it is alleged in the complaint that the plaintiffs acquired title to the lands flowed in this case, in 1848, and but a few months before the dam was built, and that Rock river is a stream which was meandered by the government surveyors, and by them returned as navigable, and that it was and is navigable in fact, for rafts, boats and barges, and is and ever has been used for that purpose, and also that the plaintiffs have an action pending, commenced May 28, 1861, to recover damages for flowing their lands, and

for relief, but it shows that they have sustained damages since; that the dam had been carried out by a flood, and that the defendants were repairing it so as again to flow said lands. The defendants demurred to the complaint, on account of the pendency of the other action, and for that the complaint did not state facts sufficient to constitute a cause of action. The circuit court sustained the demurrer, and the plaintiffs appealed.

*J. A. Sleeper,* for appellants, argued that Rock river was a navigable stream, and that the act of 1848, Laws 1848, p. 13, allowing Smith & Miltimore to build their dam across it, with a proviso that they should not flow any lands they did not own, was a void act; *Spooner vs. McConnell,* 1 McLean, 237; and that as the act of 1850, Laws of 1850, chap. 214, repealing the proviso and allowing them to flow other lands, but without providing any means whereby the owners of the lands flowed could get compensation for their lands, was unconstitutional, the parties whose lands were flowed were remitted to their common law rights and remedies, and that the mill dam act did not apply to dams built on navigable streams.

*M. S. Pritchard,* for respondents, cited *Stoughton vs. State,* 5 Wis., 291; *Newell vs. Smith,* 15 Wis., 101; 10 Wis., 451; 12 Wis., 379.

*By the Court,* COLE, J.   It is probable that we were mistaken in holding, as we did in *Newall vs. Smith,* 15 Wis., 101, that the provisions of the general mill dam law applied to dams constructed upon Rock river.   Our attention was not particularly called to the question at the time, and we overlooked the fact that the mill dam act is, by its terms, confined to dams "upon and across any stream that is not navigable."   We understood that it was a conceded point on both sides that the action in *Newall vs. Smith* was brought under the law of 1848, p. 13, Laws of 1848, as amended by that of 1850, chap. 218, Laws of 1850, and we found an insuperable difficulty in sustaining the complaint on that ground, because we deemed

the amendatory act clearly unconstitutional. We therefore thought the complaint might be held good under the mill dam law, not observing that this law did not apply to navigable streams. We did not overlook the fact that the territorial and state governments had treated Rock river as a navigable stream. And it was because it was so, that we supposed Smith, Miltimore and associates deemed it necessary in the first instance to obtain a charter from the legislature, authorizing them to erect and maintain a dam across that river on their own land, and which should flow only such land as they or either of them might own. Obviously there would have been no necessity for such legislation if Rock river had not been considered navigable. How, then, does the matter stand if the general mill dam act does not apply to any erections or dams on that river? The parties are simply remitted to their rights of action as they exist at common law. This is the inevitable logical result of this position. In this view, it becomes necessary to examine the scope and object of the complaint in this case, and determine whether it states facts entitling the plaintiffs to the relief they seek. The suit is one in equity to enjoin and restrain the defendants from further building or repairing a wing dam (which is fully described in the complaint), or in any way obstructing the natural flow of the water of that river; and asks that the dam across the river be declared to have been erected without authority, and be abated and torn down as a nuisance. This relief is asked upon the ground that the dam, as it is now constructed, causes the water of the river to overflow certain lands of the plaintiffs and thus render them worthless. There can be no doubt but the act of 1848 authorized *Smith* and associates to construct a dam across Rock river, where the one in this case was erected, and make use of any power they might thereby create for propelling any kind of machinery they saw fit to erect, and also to sell and lease the right to use the water taken from the dam, providing the dam was so constructed as not to flow any lands nor interfere with any priv-

ileges they did not own. About this there is no question. The dam, to this extent then, is lawful. *Stoughton vs. State of Wisconsin*, 5 Wis., 291. And there can be as little doubt that in no possible view could the legislature authorize them to overflow and injure the lands of others, without making just compensation. Were this an action at law brought to recover damages for the injuries which the plaintiffs had sustained in consequence of the flowage of their lands, we should have no difficulty in maintaining the suit. But it is not. The suit has a double aspect, both to restrain the defendants from making repairs upon a dam already erected, and to have the dam declared a nuisance, and abated as such. Do the plaintiffs show themselves entitled to such relief from a court of equity? Or do they show such an acquiescence in the original construction of the dam and raceway, and in the subsequent use and enjoyment of the water power thereby created, as to close a court of equity to this application for an injunction and an order tearing down the dam? It appears that the plaintiffs owned the lands overflowed in 1848. At that time *Smith* and associates commenced erecting the dam and raceway under the authority conferred by the original charter. The plaintiffs saw this dam and raceway erected, and rebuilt or repaired from time to time. Valuable improvements were made along this raceway upon the strength of the right to draw and use water from the dam. The plaintiffs acquiesced in this state of things for several years; and now ought they to be permitted to come into a court of equity and obtain an injunction, restraining the defendants from further building or repairing the dam, when such valuable improvements have been made upon the expectation of enjoying the privilege of getting water from the dam? It appears to us not. The case falls fully within the principle and reason of the rule laid down in *Sheldon vs. Rockwell*, 9 Wis., 166. In that case, it was said that the granting or refusing an injunction rested in the sound discretion of the court, and that one was never granted when it was against good con-

science or would be productive of hardship or private or public mischief. There can be no doubt about the correctness of this doctrine. If the plaintiffs have sustained any damage in consequence of the flowage of their land, they have their common law remedy. It seems to be more equitable and just, under the circumstances of the case, that they should resort to this mode of redress, than that an injunction should be granted. Past injuries are in themselves no ground for an injunction, and it is only granted when necessary to restrain irreparable mischief, suppress oppressive and interminable litigation, or present a multiplicity of suits. 2 Story's Eq. Jur., § 925, et seq.

For these reasons we think the demurrer to the complaint was properly sustained.