60    SUPREME COURT OF WISCONSIN,

Snyder and others vs. The Western Union Railroad Company.

SNYDER and others vs. THE WESTERN UNION RAILROAD COMPANY.

*Injury to land by construction of railroad thereon — Rule of damages — Evidence.*

1. Where part of a tract of land has been taken for a railroad, if the market value of the residue has been reduced by reason of the road crossing it, the owner is entitled to damages for such depreciation.
2. In such cases witnesses, who are farmers owning land in the vicinity, may be asked how much, in their opinion, the land has been thus depreciated.
3. Nor is it error to permit the witnesses to state the *reasons* for such depreciation, when the jury are instructed that they are to allow only for the actual reduction in the market value.

APPEAL from the Circuit Court for *Rock* County.

*William H., John, George A., Byron, James H.* and *Sarah Snyder, John Losee,* and *Dorliska Northrop* (*née Snyder*), appealed from the award of commissioners appointed to appraise the damages to certain lands (which they claimed to own) by the construction of defendant's railway across the same. At the trial, they put in evidence: (1) A patent from the United States to one Yates, of the E ½, S. E. ¼, Sec. 3, of a certain town. (2) A deed from Yates to one Frederic Snyder of the land last described, and also of the E. ½, N. E. ¼ of the same section (with a certain exception from the S. E. ¼, not important here); which deed was made and recorded in June, 1845. (3) The testimony of *Sarah Snyder,* showing that she was the widow, and said *William H., John, George A., Byron* and *James H. Snyder,* and *Dorliska Northrop,* were the surviving children of said Frederic (except that it was uncertain whether *John* was still living;) that the only other child (Cornelius) had died unmarried; that said Frederic died intestate in 1847, and no administrator of his estate had ever been appointed; that he lived on said lands from 1845 to his death; and

that, ever since his death, his widow, and the children until they left home, had continued to live upon it. (4) A deed from the persons last named, except *John* and *Byron*, to *Byron Snyder*, of both the tracts above described, dated April 25, 1866, and recorded October 11, 1866. (5) A mortgage of the same lands by *Byron Snyder* to *John Losee*, dated June 1, 1866. (6) A mortgage of the same lands from *Byron Snyder* to said *William H., Dorliska, George A.* and *James H.*, dated September 20, 1866, and recorded October 11, 1866 The introduction of the three instruments last mentioned was objected to, on the ground that no title had been shown in the grantors therein named.* Plaintiffs then introduced the testimony of one Locke, a surveyor, accompanied by a map of the tracts in question, showing the location of defendant's road across said E. $\frac{1}{2}$, S. E. $\frac{1}{4}$; that the amount of land thus taken was about $3\frac{27}{100}$ acres; that the remainder of the farm contained 158 acres; and that the track had been filled so as to be higher than the natural surface of the land. The plaintiffs then introduced various witnesses, who testified that they were farmers, that they lived in the neighborhood of the premises in question and had known them for many years, and that defendant's road was constructed in 1856. The first of these witnesses testified that the land taken by defendant for its road was worth fifty dollars per acre; and that the construction and maintenance of the road rendered less valuable the remainder of plaintiffs' premises, by the sum of $2,000. This evidence was objected to, on the ground that plaintiffs had not shown title to the premises; and the second statement on the further ground that the witness's opinion was not competent evidence; but the objections were overruled. On cross-examination, the

---

* The items of evidence above numbered (6) and (5) were introduced before those numbered (3) and (4); and the objection to them seems, therefore, to have been well founded at the time it was taken.— Rep.

witness stated that the sum above-mentioned was intended to *include* the value of the land occupied by the track; that among the items of damage that would be sustained from the location and running of the road, in working the farm, one of the most important would be the irregular shape into which the fields were thrown, causing loss of time and other loss; that another would be "the crossing, opening two gates, and having a grade to go over," for which, he thought, fifty dollars a year would not be too great a compensation; that another would be "the damage of having fences burned by fire from the engine," as also some danger to the crops from the same cause; that, in his judgment, from $75 to $100 a year would be "a fair compensation for the extra time and expense of carrying on the farm and doing business upon it;" and that "the whole farm, with the railroad off entirely, would be worth fifty-five dollars per acre," he thought, and was now worth only forty to forty-five dollars per acre. On being re-examined for plaintiffs, he testified, against objection, that the railroad injured the value of a certain part of the farm, because, if the buildings were on that part, the main body of the farm being on the other side of the track, the transportation of the farm products to the house would require frequent crossing of the road; and because the water was also on the other side of the track, and the pasture would have to be there, or the stock would have to be driven across the road, etc. He further testified that the filling at the crossing was about four and a half feet.

The other witnesses for plaintiffs, in their direct and cross-examinations, gave answers similar in general character to those of the first witness; and their testimony upon the direct examination was received against defendant's objection.

The jury were instructed, that, in appraising the damages to plaintiffs' lands not taken for the railroad, they

were not to compensate plaintiffs for remote or possible injuries which might or might not occur, such as damage by fire, frightening of horses, or injuries to the person or personal property of the occupant of the farm by reason of defendant's neglect to maintain suitable gates or crossings, or other misconduct of defendant; but only for injuries which would result from a proper construction of the road, and the construction and maintenance of suitable fences, gates and crossing. They were further instructed that their assessment of damages must be made upon the following principles: "First, you will assess the fair market value of the land actually taken, without any diminution for benefits. Secondly, you will assess the immediate and direct damages to plaintiff's land not so taken, by reason of the construction of the road across their farm, deducting therefrom the value of any special and peculiar benefits accruing thereto from its construction," but making no deduction for benefits which plaintiffs enjoy in common with their neighbors, as from a general increase in the value of lands in that neighborhood, etc. The court refused to instruct the jury, as requested by defendant, that they were "to consider only how the taking of the land occupied by the defendant would affect the other lands, but not how any particular use of the railway would affect them; i. e., they should award the same damages as if the land taken was to be used for a garden, or other lawful purpose." To this refusal, and to an instruction that plaintiffs had shown title to the premises claimed by them, defendant excepted.

Verdict for plaintiffs, for $1,000; new trial denied; and defendant appealed from a judgment on the verdict.

*Fuller & Dyer*, for appellant, contended: 1. That the plaintiffs had failed to show title in themselves to the lands claimed by them. 2. That it was error to admit the testimony of witnesses as to their opinion of the damages to plaintiffs' lands not taken for the road.

The case was not one where the witnesses could testify as experts. *Norman v. Wells,* 17 Wend. 136, 161–163; *Chapin v. R. R.,* 6 Cush. 422. And their opinions as to damages were inadmissible. *Wyman v. R. R. Co.,* 13 Metc. 316, 326; *Cleveland, &c., R. R. Co. v. Ball,* 5 Ohio St. 568, 573; *Atlantic, &c., R. R. Co. v. Campbell,* 4 id. 583, 585; 1 Redfield on R. W. 274. 3. All evidence of remote, speculative or contingent damages should have been excluded. *Troy & Boston R. W. Co. v. Northern Turnpike Co.,* 16 Barb. 100; *Rochester, &c., R. R. v. Budlong,* 6 How Pr. 467; *Lincoln v. R. R.,* 23 Wend. 425, 432. And the effect of the improper admission of such evidence was not overcome by the instructions. 4. The court erred in refusing the instruction asked by defendant. *Albany, &c., R. R. Co. v. Lansing,* 16 Barb. 68, 71.

*Conger & Sloan,* for respondents, as to the proper rule of damages, cited the charter of the company (Pr. Laws of 1854, ch. 16), which provides that it shall be the duty of the commissioners appointed to estimate damages, " to estimate the value of the land so taken or acquired by said company, and all damages which the owner or owners thereof shall sustain, or may have sustained, by reason of the taking of the same *for the construction and use of said road, or works appertaining thereto,* taking into consideration the advantages as well as the disadvantages of the same by *means of the construction and operation of the said road* to the said owner or owners ;" and that, on appeal from the award of commissioners, the jury empanneled to try the case " shall find the value of the land so taken or required by said company, and the damages which the owner or owners thereof shall have sustained, or may sustain by the taking of the same, over and above the benefits which will accrue to such owner or owners *from the construction of such railroad ;* and the judgment of the court shall be entered accordingly." They compared with

this the provisions of the New York statutes (Laws of N. Y. 1850, ch. 140 ; 1 R. S. of N. Y., 4th ed., 1226) ; and they also cited *Milwaukee & Miss. R. R. Co. v. Eble*, 4 Chand. 72 ; *Robbins v. R. R. Co.* 6 Wis. 636 ; *Troy & Boston R. R. Co. v. Lee*, 13 Barb. 169 ; *Albany, &c., R. R. Co. v. Lansing*, 16 id. 68 ; *East Pa. R. R. Co. v. Hottenstine*, 47 Pa. St. 28 ; *Harvey v. R. R. Co.*, id. 428. As to the admission of the opinions of witnesses in evidence, they cited *R. & S. R. R. Co. v. Budlong*, 6 How. Pr. 467 ; *Same v. Same*, 10 id. 289 ; 4 Chand. 72 ; 13 Barb. 169 ; *Watry v. Hiltgen*, 16 Wis. 516.

COLE, J. We really do not see any force in the objection that the respondents failed to prove title to the premises in question. It was clearly shown that they were the heirs at law of Frederic Snyder; the grantee of the original patentee, and also of Cornelius Snyder. The decease of both these persons was proven. It seems to be assumed that they were also claiming as heirs at law of *John Snyder*. But we do not so understand it. *John* is made a party to the proceeding, upon the presumption, we suppose, that he is still living. Upon paying the judgment, the company will make compensation for his interest, as well as for the interest of the other parties. The whole legal title was represented by *Byron* and *John Snyder* ; and those interested in the mortgage were before the court.

The important question in this case is that which relates to the ruling of the court as to the admission of evidence. Witnesses were asked what, in their opinion, was the value of the land actually taken for the use of the railway track. They were also asked whether the residue of the farm was less valuable in consequence of the railroad crossing it in the manner it did, and how much the property was depreciated in value thereby. Now, it is said that this testimony was improperly admitted, because it was merely calling for

the opinion of the witnesses as to what was the amount of damage to the land not taken by the company, in consequence of the railroad running through the farm, and that the witnesses should have been examined only as to the facts within their personal knowledge which might have a bearing upon the question of damages, and which might aid the jury in estimating the extent of the injury. As a general rule, the testimony of witnesses is confined to a statement of facts coming from observation, knowledge and recollection, as distinguished from mere inference or opinion. But this rule has its exceptions. "There is certainly a very considerable number of subjects in regard to which the jury are supposed to be well instructed, and altogether capable of forming correct opinions, and in regard to which the testimony of experts is not competent or not requisite, but which it is more or less difficult for the witnesses to describe accurately, so as to place them fully before the minds of the jury as they exist in the minds of the witnesses." 1 Redfield on Railways, § 10, page 16. And of this character is the question in regard to the value of property. It is impossible for witnesses to so clearly and accurately describe the situation and condition of a farm, the inconveniences and disadvantages resulting from a railroad crossing it, as that a jury, from this evidence alone, can arrive at a just conclusion as to the injury to the property. Hence many courts, from the necessity of the case, have sanctioned the rule which permits witnesses to state their opinion as to the value of property, real and personal, which is the subject of litigation. In this case the witnesses were farmers, well acquainted with the situation and condition of the farm, and they were asked how much the market value of the land not taken was diminished in consequence of the railroad crossing it in the manner it did. How much less per acre is the land worth by reason of the road passing over it? was the question asked. The object

was to ascertain whether the saleable value of the property had been diminished thereby; and, if so, to what extent. In that form was not the question a proper one? Could not the witnesses state the difference between the value of the farm as it would have been if the road had not crossed it, and its value in its then present condition? It seems to us that they might give their opinion as to the value of the property if the railroad had not crossed it, and its market value as it then was. Without the opinion of the witnesses as to the value of the land as it then was, and as to its value had not the road passed over it, the jury would have been unable to estimate the amount of damages. If the residue of the farm was depreciated in value by reason of the railroad crossing it, the respondents were entitled to compensation therefor in such a sum as should make good the loss. This was decided in *Robbins v. Milwaukee & Horicon R. R. Co.*, 6 Wis. 636; and the doctrine is founded in reason and justice. For, if property is materially and permanently diminished in value in consequence of a railroad running over it, why should not the owner have full satisfaction in damages? Equity and justice require that he be compensated, not only for the land actually appropriated by the company for the use of its road, but also for the incidental injury to the value of the residue of the property. And the charter of this company recognizes this most equitable principle, by requiring the commissioners appointed to view and examine all the lands taken, with the buildings and improvements thereon, "to estimate the value of the land so taken or required by said company, and all damages which the owner or owners thereof shall sustain or may have sustained by reason of the taking of the same for the construction and use of said road, or works appertaining thereto, taking into consideration the advantages as well as the disadvantages of the same, by means of the construction and operation of the said

road, to said owner or owners." Ch. 16, Priv. Laws, 1854. And, in order to aid the jury in estimating the incidental damages resulting to the property by reason of the construction of the road, the witnesses were properly asked how much less the residue of the farm was worth in consequence of the road passing over it in the manner it did. They were allowed to describe how the road crossed the farm, the height of the grade, the inconvenience and trouble of passing from one part of the farm to another with cattle and agricultural implements, and thus, as far as possible, bring before the jury all these facts and circumstances. But even then the jury, with all these facts before them, would be unable to render a proper verdict as to the amount of damages, unless they could have the opinion of the witnesses as to the value of the land before and after the location of the road. In no other way, as it seems to us, could the jury ascertain the extent of the injury sustained.

In this case, the witnesses stated what, in their opinion, was the depreciation in the market value of the farm in consequence of the road passing over it, together with some reasons and facts why it was diminished in value. It is said that, in giving their opinion as to the amount of damages to the lands which were not taken, they naturally and necessarily included in their estimate remote and fanciful injuries which possibly might occur by reason of operating the road. We do not so understand their testimony. True, some of the witnesses were asked why it was that the residue of the farm was so greatly diminished in value in consequence of the road crossing it, and they gave various reasons. They said it was inconvenient and troublesome to cross the track, from one part of the premises to another, with cattle and agricultural implements; that there was more or less danger to person and property when doing so; that grain and property near the

track were exposed to fire from locomotives ; that horses were liable to be frightened by passing trains of cars, and to run away and destroy property ; and that, on account of these things, the farm was less valuable. But this evidence was not introduced for the purpose of laying the basis for the recovery of damages for such remote and speculative injuries. The manifest object of it was to account for the decrease in the value of the property. For the witnesses say the actual depreciation in the salable value of the farm resulted from these things. That is, all persons wishing to buy property would not pay so much for it, because of such possible injuries and exposures. And by as much as the real value of property was diminished in consequence of such inconveniences, dangers and annoyances resulting from the construction of the road, by so much was the owner of the property injured. But there is a very wide distinction between giving damages for such remote and possible injuries, and compensating the owner for the actual depreciation of his property, because of its exposure to such hazards and dangers. Whatever may cause the depreciation, the loss to the owner is the same. If, in consequence of its exposure to these remote injuries, the property is diminished one-half in value, then this decrease in value measures the actual loss to the owner. And, when compensated for this depreciation in the value of his property, he is not receiving compensation for some imaginary injury, some fanciful loss, which may or may not occur, but he is paid for a real loss which he sustains by the building of a railroad across his property. If the construction of the road across his land depreciates the property one-half its value in the market, then he is damnified to this extent. It matters not what causes the depreciation in value, whether exposure to fire, annoyance from trains, or danger to person and property, the real question is, whether, in consequence of the railroad, the property is

diminished in value; and if so, how much; for this will measure the direct and necessary loss which the owner has sustained by the construction of the road over his land. And all that the witnesses were asked to state was, how much less was the market value of the farm in consequence of the railroad crossing it; and they were allowed to state their opinion upon that point, together with the facts or reasons upon which that opinion was founded. We think the evidence was competent for the purpose for which it was allowed, and that in no other way was it possible to bring before the jury such facts as would enable them to render a verdict for the proper damages.

It is proper to add, that the court directed the jury that they must disregard all testimony tending to prove remote and speculative damages, and only give the respondents such sum as would indemnify them for the loss they had sustained in consequence of the construction of the road across the farm. The jury, in estimating the extent of the injury to the property, were expressly told that the respondents were entitled to recover only for the direct damage resulting from the construction of the road.

We see no error in the proceedings which warrants a reversal of the judgment.

*By the Court.* — Judgment affirmed.