## PICK VS. THE RUBICON HYDRAULIC COMPANY.

ARBITRATION AND AWARD: (1.) *When error in form of award disregarded.*

FLOWAGE OF LAND BY MILL-DAMS—REPEAL OF STATUTE—LEGISLATIVE POWER—EFFECT OF REPEAL: (2.) *Defendant's rights under original charter.* (3.) *Amendatory and repealing act.—Right of legislature.—Effect on defendant's rights.*

FLOWAGE OF LAND: (4–6.) *Vendor and purchaser; their respective rights as to recovery of damages.—Measure of purchaser's damages.*

PRACTICE: (5, 7.) *Reversal of judgment for improper allowance of damages.—View of property by jury: order of court not appealable.*

CONSTITUTIONAL LAW: (8.) *Legislative power to authorize flowage of land.*

1. Arbitrators appointed under defendant's charter to determine plaintiff's damages for flowage of his land by defendant's dam, awarded a certain amount nominally against the "officers" of said company, but the award contained sufficient to show that the thing meant was the damages for which the company was liable. On appeal from the award by the company, and verdict against the appellant, the latter objected for the first time, on a motion for a new trial, that the award was not against it, but against the officers. *Held,* on appeal from a judgment on the verdict, that the award must be treated as one against the company, and that the circuit court acquired jurisdiction.

2. Under defendant's original charter (ch. 71, P. & L. Laws of 1866), which applies to it, the provisions of the Mill-dam Law (ch. 56, R. S.), it acquired an easement in land flowed by its dam (erected in 1866), *before* any proceedings were instituted to determine the compensation due the owner; and it could be divested of the easement only by a sale of the mill property to pay the damages assessed pursuant to the law; and the easement would then have gone to the purchaser at such sale.

Wis. xxvii—55

3. But by amendatory acts (ch. 201, P. & L. Laws of 1867, and ch. 144, P. & L. Laws of 1868), the provision applying to defendant the general mill-dam law was repealed, and other provisions substituted, giving it an easement in lands flowed by its dam, *after* certain proceedings shall be commenced to determine the compensation. *Held,*

(1.) That the legislature had authority thus to modify the charter and the rights of the corporation thereunder.

(2.) That in the case of lands already flowed by defendant's dam, where no proceedings had been had under the Mill-dam Law to determine the damages, the effect of the amendatory acts was to render their *continued* flowage unauthorized until proceedings should be commenced under the amended charter.

4. Plaintiff, who purchased the land after defendant had thus *lost* its easement, was entitled to proceed in the manner provided by the amended charter to recover damages for the flowage subsequent to his purchase. But the right of action for the previous flowage is in his vendor.

5. The judgment is reversed because it includes either interest on the value of the land, or *rent* therefor, during a period *prior* to plaintiff's purchase, and because this court cannot determine whether the jury allowed interest or rent; and if the latter, cannot determine what amount was allowed therefor.

6. The proper measure of plaintiff's damages is the value, *at the time of his purchase,* of the land actually flowed, and the depreciation in the value of his other land, together with interest on the aggregate from that date until the time of trial.

7. It is purely a matter for the discretion of the circuit court, whether the jury shall be directed to *view* the property alleged to be injured; and its order on that subject is not appealable.

8. This decision is intended to leave open the question whether the legislature can authorize the perpetual flowage by one person of lands of another, without the owner's consent, by a dam not erected for the purpose of creating a water power to propel a grist or custom mill—that question not having been raised in the case.

APPEAL from the Circuit Court for *Milwaukee* County.

Action for damages for the flowage of plaintiff's land, caused by defendant's dam. Verdict for the plaintiff; new trial denied; and from a judgment on the verdict the defendant appealed. The case is stated in the opinion.

*Frisby & Weil*, for appellant, argued, among other things, that to give the circuit court jurisdiction, there must have been a valid award, in compliance with the statute (*Verbeck v. Verbeck,* 6 Wis. 159); and the award here not being against the company, but against its officers, the court did not acquire jurisdiction. 2. That the act of 1867 (P. & L. Laws, ch.

201), which required the arbitrators to "make an award of *the amount* of compensation which shall be paid by such company," etc., determined that only one damage—in gross—should be recovered; that the person who *then* owned the land was entitled to this amount, and subsequent general conveyance of the land did not transfer the claim to the plaintiff; and that plaintiff therefore sustained no injury, and could recover nothing. *Moor v. The City of Boston*, 8 Cush. 274, 277–78; *Boynton v. R. R. Co.*, 4 id. 467, 469. 3. That the court abused its discretion in refusing to permit the jury to view the premises. R. S. ch. 118, sec. 32. 4. That plaintiff was at least not entitled to either interest or the rental value of the land during the time when he did not own the premises.

*Mann & Cotzhausen*, for respondent, argued that the technical objection to the form of the award came too late, and had been waived. 2. That there was no evidence as to when the lands were first overflowed or the dam built, although the court assumed that its construction was commenced in 1866; that there is no evidence that plaintiff was not in possession and occupancy of the land prior to the fall of 1867; that there was nothing to show that the *taking* of the lands was *complete* when the construction of the dam was commenced; that under the charter there could be but *one* assessment of damages, for the past and future— but one consideration for the *exclusive right perpetually to use*, etc., and it is not pretended that such easement in these lands was ever acquired from any one else, or that plaintiff became the owner of the land subject to it. 3. That the peculiarity in the charter of the company distinguished the case from all those heretofore decided by this court in regard to damages for the flowage of land.

LYON, J. The defendant was created a body corporate by chap. 71 of the Private and Local Laws of

1866, and was authorized by such act to erect dams across a stream known as the "Rubicon," in Dodge and Washington counties, or upon any of the branches, inlets or feeders of that stream from which water power might be created; to dig, build and maintain races, flumes, aqueducts, etc., for conveying water; and to create and maintain ponds and reservoirs of water for the purpose of creating water power to operate machinery; and to raise and lower the same at pleasure. Sec. 4 of the act provided, that if the company overflowed any lands which it did not own, without the consent of the owners thereof, compensation therefor should be recovered pursuant to chap. 56 of the Revised Statutes, entitled of "Mills and Mill Dams," and in no other manner.

Section 4 of the charter was amended by the Private and Local Laws of 1867, ch. 201, and again by the Private and Local Laws of 1868, chap. 144, so that it now provides, in substance, that where the company and the owner of the land overflowed are unable to agree, the compensation to which the owner is entitled shall in the first instance be ascertained by arbitration. The mode of appointing arbitrators is prescribed in the statute, and either party may procure it to be done and bring the matter to a hearing, and two of the three arbitrators may make a valid award. Either party may appeal from the award, within a specified time, to the circuit court. The damages are to be assessed in gross, and when paid or tendered to the party entitled thereto, the exclusive right to the perpetual use of such land becomes vested in the company. The act as it now stands contains no reference to the "Mill Dam Act," but contains a provision as follows: "The said company shall have full power and authority, pending all such proceedings and until they shall refuse to pay the compensation so to be ascertained as aforesaid, to use, occupy and enjoy the peaceable and uninterrupted possession of said lands for

all the lawful purposes of said corporation; and they shall not, while such proceedings shall be pending or until such refusal, be disturbed in such possession, use or occupancy and enjoyment, by any proceeding either at law or equity." Private Laws of 1867, chap. 201.

In 1866, the company erected a dam pursuant to its charter, and raised the waters of "*Pike Lake*" so that the same overflowed a portion of the premises in question. The plaintiff was not then the owner of such premises, but purchased them in the fall of 1867. In September, 1868, he procured arbitrators to be appointed pursuant to such amended charter; and two of these arbitrators subsequently made an award in writing, fixing the amount of the compensation to which the plaintiff was entitled at $600, and specifying therein the height of the gate and the size of the opening through which the water reaches the gate, with reference to which the damages were fixed and determined.

The company, being dissatisfied with the award, appealed to the circuit court for Washington county; and the place of trial was afterwards changed to the circuit court for Milwaukee county, where the appeal was tried, and the trial resulted in a verdict and judgment for the plaintiff for $747 damages, and for costs.

From that judgment the defendant, the *Hydraulic Company*, has appealed to this court.

I. It is argued that the circuit court had no jurisdiction of the case, because there was no award between the proper parties, it being claimed that the same is against the officers of the defendant, and not against the defendant.

I do not think that this objection is well taken. There is sufficient in the award to show that it is against the company, although the term "officers of the said company" is employed in it twice. Yet it is

perfectly apparent that the term is so used as denoting the company itself, for it awards damages resulting from the erection of certain structures "*by said company*," and specifies that whenever the "*Rubicon Hydraulic Company*" sees fit to change these dimensions, "the award of damages contained in the following may be changed accordingly." Besides, the company made itself a party to the proceedings by voluntarily appearing and appointing one of the arbitrators. The company also appealed from the award, treating it as an award against it, and not against its officers merely; and the objection does not appear to have been taken until a motion was made for a new trial. I think that it must be held to be an award between the parties to this action.

II. It is claimed by counsel for the defendant, that inasmuch as the land was flowed before the plaintiff became the owner of it, he has no action therefor, but that the right of action is in the plaintiff's grantor alone.

It is said that there is no testimony tending to show when the dam was erected and the land overflowed. It may be true that the bill of exceptions contains no such testimony, but the circuit judge instructed the jury that this was done in 1866; and, inasmuch as the bill of exceptions does not purport to give all of the testimony, it must be assumed that the facts were proved as stated by the judge, and that the land in question was overflowed before the plaintiff became the owner of it. Does this fact defeat his right of action for the damages caused by the overflowing of such lands? This is a very important question, and one by no means free from difficulty.

I have reached the conclusion, after a careful examination of the cases bearing upon it, that the question must be answered in the negative, and I proceed to give the considerations which have impelled my mind to that conclusion.

There are several cases in this state that bear upon this question, but before commenting upon them I will briefly refer to the position of the parties at the time the plaintiff purchased such overflowed lands, in respect thereto.

The charter of the defendant does not give it any right to flow lands of other parties before proceedings are instituted to appraise the damages. Under the Mill Dam Act (R. S. ch. 56), such right doubtless exists. That law gives the mill owner power to erect the dam and raise the water, and if the lands of other persons are thereby overflowed, it restricts the remedy of such persons therefor to proceedings under such law. Sec. 29 provides that "no civil action shall be maintained for the recovery of damages for the erecting, maintaining or using any mill or mill dam, except as provided in this chapter." Thus, as soon as the land is flowed, the right of the mill owner to the easement becomes vested, and he can only be divested of it by a sale of his mill property for failure to pay the damages which may have been assessed pursuant to the law; and even in that case the right goes to the purchaser at such sale.

Not so in this case. For while the charter of the defendant gave it the right to flow the plaintiff's land, it gave it no right to do so until proceedings to appraise his damages should be commenced. That portion of the charter has already been quoted. Until those proceedings were commenced, I discover no reason why the plaintiff or his grantor could not have maintained an action therefor, in the nature of an action on the case as for a nuisance, against the defendant, upon the ground that it had acquired no easement or right to flow his lands. He also had the legal right to institute proceedings under the charter of the defendant to procure an appraisement and award of his damages; and as soon as the plaintiff did so, the easement became thereby vested in the defendant, but

not until then. And when such damages shall be ascertained, if the defendant fails to pay the same; it will thereby become divested of such easement, and the parties will be again remanded to their common law rights and liabilities. I do not forget that under the original charter, which was in force when the dam was erected, the provisions of the mill dam act were applicable thereto, and the easement became vested in the defendant. But that feature of the original charter was repealed by the amendment of 1867, and the easement fell with it. While it may be true that a natural person might, under the mill dam law, erect a dam where that of the defendant is erected, and flow the plaintiff's land in the same manner that it is now flowed, and thus acquire an easement on such land, yet it would seem competent for the legislature to impose special restrictions upon a corporation created by it, and compel it to acquire such easement, if it acquired it at all, by different means and through different processes. I think the legislature has done so by enacting this amendment to the charter of the defendant, and that by such amendment it lost any rights under the mill dam act which it may have had by its original charter. It is practically a repeal of the mill dam law so far as the defendant is concerned, and affects the defendant as a repeal thereof, without a saving clause, would affect natural persons; that is, it either remands the parties affected thereby to their common law rights and obligations, or to the rights and obligations which the legislature may have substituted in place of the repealed act.

Keeping in view, then, the proposition that when the plaintiff purchased the lands which were thus flowed, the defendant had no such easement therein, but was liable to an action in the nature of an action on the case at the suit of the plaintiff for flowing his land, I will refer briefly to the cases before mentioned.

In *Faville v. Greene*, 12 Wis. 11, the complaint was under the mill dam law, and a demurrer was interposed thereto because it failed to aver that the plaintiff was the owner of the land when it was first overflowed. An order overruling the demurrer was affirmed by this court, on the express ground that the complaint wholly negatived and rebutted the presumption that the plaintiff took the lands overflowed, subject to any easement whatever. Although it did not clearly appear by the complaint in that action that the plaintiff purchased the overflowed lands after they were so overflowed, yet it is fair to presume that had the complaint contained that averment the decision would have been the same.

The cases of *Newell v. Smith*, 5 Wis. 101, and *Cobb v. Smith*, 16 Wis. 661, will be considered together in their bearing upon this question, as they relate to the same mill dam. There the dam was erected across the Rock river, which is a navigable stream, by virtue of a law purporting to authorize the erection thereof; but this court held such law unconstitutional so far as it attempted to authorize the overflowing of the lands of the respective plaintiffs, and that the parties were thereby remanded to their common law rights and liabilities.

In the first of these cases it was held that the plaintiff, who purchased the land after it was overflowed, could maintain an action therefor on the ground that the injury to his land was in the nature of a continuing trespass. It is true that Mr. Justice COLE there expressed the opinion that a purchaser, under such circumstances, where no compensation in gross had been made to the former owner, could maintain an action for damages sustained by him after he purchased the estate; and it is also true that the opinion was so expressed when it was supposed that the action could be maintained under the mill dam act. In view of the real facts in that case the decision was doubt-

less correct; but, as at present advised, I should hesitate to hold that a purchaser of overflowed lands, taking title thereto after they were overflowed, can maintain an action therefor in a case where the only remedy is under the mill dam act. The easement having vested in the mill owner before such purchase, I am very strongly inclined to the opinion that the exclusive right of action is in him who owned such lands at the time they were overflowed. But in this behalf I speak only for myself. These views appear to be supported by the decision of this court in *Pomeroy v. The Chicago and Mil. R. W. Co.*, 25 Wis. 641. That was an appeal from the appraisal of damages to the lands of the plaintiff's testator by reason of the location and construction of its railroad over the same by the Green Bay, Chicago and Milwaukee Railroad Company. The charter of that company gave it the right in the first instance to enter upon any lands and survey and lay down its road. Laws of 1851, ch. 262, sec. 8. After the road was constructed across the lands of the plaintiff's testator, and before proceedings were instituted to procure an appraisal of his damages, he conveyed away a part of such lands. This court held that the plaintiff was entitled to the damages to the lands so conveyed, as well as to the remainder of the lands which were not conveyed. There the railroad company had lawfully entered into the use and enjoyment of the easement before such conveyance, and the right to compensation therefor became vested in the original owner, and did not pass to his grantee, and the decision was put upon the express ground that " where there is a sale of a tract of land upon which there is an obvious existing easement or burden of any kind, like an ordinary highway, a railroad or mill-pond, the fair presumption, in the absence of any express provision on the subject, is, that both parties act with direct reference to the apparent existing burden, and that the vendor demands, and the pur-

chaser pays, only the value of the land subject to it."
(See opinion by PAINE, J., p. 643.)    To the same effect
is the case of *Kutz v. McCune*, 22 Wis. 628.

The doctrine which I deduce from these cases, is,
that the right of action for damages occasioned by an
easement upon land, is in him who owns the land when
the easement is acquired.   We have already seen that
the defendant, under its amended charter, acquired
no easement upon the land of the plaintiff until pro-
ceedings were commenced to procure an award of
damages.   The plaintiff being then the owner of the
land, can therefore maintain this action.

For the purposes of this case, I assume that the pro-
visions of the charter of the defendant which author-
ize it to acquire the right to flow lands that it does
not own, and to flow such lands perpetually without
the consent of the owner thereof, is a constitutional
exercise by the legislature of the right of eminent
domain.   I do this because neither party raises the
question, but both concede that the provisions of the
defendant's charter in this respect are constitutional
and valid.   The counsel for the defendant express that
opinion in their brief, and the counsel for the plaintiff,
although evidently restive and uneasy under the re-
striction, inform us that their client has instructed
them not to discuss the validity of the law.

Under these circumstances, we feel justified in
assuming that the law which we are considering is a
valid enactment, without stopping to enquire whether
the use for which the plaintiff's property may be
taken pursuant thereto is such a " public use " as will,
under the decisions of this court, justify such taking.
*Fisher v. Horicon Iron and Manuf. Co.*, 10 Wis. 351.

III. It is argued by counsel for the defendant, that
the circuit judge gave the jury an erroneous rule of
damages.   If I understand the charge correctly, it
was, in substance, that the rule of damages was the
value of the land overflowed by the defendant, to be

assessed as of the time when it was first overflowed, to wit, in 1866—and either interest on such value or a fair rental for such land, in the discretion of the jury, from that time to the time of trial. The rule here laid down was erroneous in that it gave the plaintiff damages, either by way of interest or rental, for the occupancy of the land by the defendant for one year before he became the owner thereof. I know of no principle of law which would give such damages to the plaintiff. We have seen that during that year, and particularly after the repeal of section four of its original charter, the defendant had no right of flowage upon the land—its occupancy thereof being in the nature of a continuing trespass—and it is very clear that the right of action therefor was not transferred to the plaintiff by a conveyance of the land to him, but remains in the original owner. It is not without some difficulty that I have reached the conclusion that the damages can be assessed as of the time when the plaintiff became the owner of the land, instead of awarding them as of the time when he commenced proceedings for that purpose. But to avoid multiplicity of actions, I think we shall be warranted in holding that the award may be made as of the time when he acquired title, which was in 1867. I see no good reason why the plaintiff should not be allowed interest on the sum so awarded as damages, from the date of his purchase. This is not an action *ex delicto;* and although the damages may have been to some extent unliquidated until the award, yet they are in the nature of the consideration to be paid for land, or rather for an easement in land, the price of which had not been determined. I do not think the authorities go to the extent of denying the right to recover interest in such a case.

If we could ascertain the amount of such excess of interest or rent, from the record, it might not be necessary to reverse the judgment for that error, but

the judgment might be affirmed on the terms and conditions imposed in *Kavanaugh v. Janesville*, 24 Wis. 618. But we cannot thus ascertain such amount, because we cannot say whether the jury gave *interest* or *rent;* and if rent, we have no data from which to ascertain the amount thereof. So it seems inevitable that the judgment of the circuit court must be reversed.

Before leaving this branch of the case, we deem it proper to state what we conceive is the true rule of damages, to the end that there may be no misapprehension in relation thereto when the action shall be again tried.

Of course, the plaintiff, whose property has been taken for public use, is entitled to just compensation therefor. Constitution, art. I, sec. 13. In the case of *Bigelow v. The Western Wisconsin Railway Co.*, decided by this court at the present term, it was held that "just compensation" consists in making the owner good, by an equivalent in money, for the loss he sustains in the value of his property by being deprived of a portion of it; and that it includes not only the value of the portion taken, but also the diminution in value of that from which it is severed. In establishing this rule we followed the reasoning of this court in *Robbins v. Milwaukee and Horicon R. R. Co.*, 6 Wis. 636 ; in *Snyder v. The Western Union R. R. Co.*, 25 Wis. 60, and in *Welch v. Milwaukee and St. Paul R. R. Co.* [*ante*, p. 108]; and adopted the doctrine of numerous adjudications by the courts of other states on the same subject.

Applying the foregoing principles to this action, the plaintiff is entitled to recover the value, at the time he became the owner thereof, of his lands actually overflowed by the defendant, together with the amount of depreciation in the value of his other lands of which the portion so overflowed is part and parcel, by reason of such overflowing, such depreciation to be assessed

as of the same time; and interest on the aggregate amount from that time until the day of trial.

IV. Several exceptions were taken during the progress of the trial, to the rulings of the court, admitting and rejecting testimony, which we do not think it necessary to pass upon. The rule of damages which we have given will enable the circuit court to rule advisedly on all such questions as may arise when the case is again tried.

V. During the progress of the trial, and after all of the testimony in the action had been introduced, the defendant by its counsel moved that the jury might be taken to view the premises in question, and offered to advance sufficient money to defray all of the expenses of such view. The court denied such motion, and an exception was duly taken to the ruling of the court. We think that it is purely a matter of discretion with the court to order or to refuse to order a view by the jury, and that we cannot review the decision upon an application or motion therefor. R. S. chap. 118, sec. 32.

*By the Court.*—The judgment of the circuit court is reversed, and a *venire de novo* awarded.