THE PENRHYN SLATE COMPANY et al., Respondents, *v.* GRANVILLE ELECTRIC LIGHT AND POWER COMPANY et al., Appellants.

1. INJUNCTION — DISCRETIONARY POWER OF SUPREME COURT. While recognizing to its fullest extent the discretion vested in the Supreme Court in issuing or refusing an injunction, the power is not absolutely unlimited, as it frequently happens that facts are proved which raise questions of law reviewable by the Court of Appeals.

2. APPEAL — REVIEW OF JUDGMENT REFUSING INJUNCTION — ORDER OF APPELLATE DIVISION REVERSING UPON THE LAW AND THE FACTS. Upon an appeal from an order of the Appellate Division reversing a judgment dismissing the complaint upon the merits in an action by a riparian owner for a permanent injunction restraining the alleged diversion of a stream, the Court of Appeals has power to review the action of the trial court, where the facts proved raise reviewable questions of law; and it is not precluded therefrom by a statement in the order that the reversal was upon the law and the facts, where an examination of the record shows that there are no disputed facts and no conflicting inferences to be drawn therefrom.

3. ACTION BY RIPARIAN OWNER TO RESTRAIN DIVERSION OF STREAM — WHEN LACHES ESTOPS PLAINTIFF FROM MAINTAINING THE ACTION. Where it appears in such an action that the diversion, if any, was caused by the defendant, a municipality, which fifteen years before had erected

a system of water works, and against the construction of which the plaintiffs or their predecessors had made no protest, that the system had been operated ever since, and during all that time they had never attempted to assert their alleged rights until the commencement of the action, they are chargeable with such laches as will estop them from maintaining it, and under such circumstances it is not necessary for the trial court to examine the question of the alleged diversion and in the exercise of discretion determine whether the prayer for a perpetual injunction should be granted.

4. When Injunction Not Necessary to Prevent Acquisition of Prescriptive Right.  The claim that although the diversion was nominal and the damages slight, unless an injunction was granted the defendant might by lapse of time acquire a prescriptive right to the use of an indefinite quantity of water from the stream, is untenable, since the use could not be enlarged and a prescriptive right founded thereon; and, moreover, if there were any damages, the plaintiff has an adequate remedy at law.

*Penrhyn Slate Co.* v. *Granville El. L. & P. Co.*, 84 App. Div. 92, reversed.

(Argued December 14, 1904; decided March 7, 1905.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered June 8, 1903, reversing a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term and granting a new trial.

This action was brought by the plaintiffs as riparian owners to obtain an injunction restraining the defendant, the Granville Electric Light and Power Company, from continuing to pump from the Mettowee river a supply of water for the village of Granville under a contract whereby said company agreed to supply that village with such quantity of water as it should demand for a specified compensation.

The material findings of fact are as follows: The village of Granville is located on a non-navigable stream known as the Mettowee river; that each of the plaintiffs is the owner of a mill and dam across said river, and that the defendant, the Village of Granville, takes its supply of water for domestic and municipal use from the stream above plaintiffs' mills;

6

that the defendant, the Village of Granville, has taken and is now taking from said stream an average of about two hundred thousand gallons daily for use among its inhabitants and for public purposes; that the defendant, the Village of Granville, hires the pumping done for its water system by the defendant, the Granville Electric Light and Power Company; that it is stipulated that the Granville water works were established in the year 1885; that the average flow of the stream at plaintiffs' dams, including high and low water, is about eighty million gallons in twenty-four hours, and the average low-water flow yields about twenty-four and one-half million gallons in twenty-four hours; that the plaintiffs' dams are not well constructed, and that when the gates of plaintiff, the Penryhn Company's dam, were closed and the water not running over the dam, there flowed through the dam by leakage over eighteen hundred cubic feet of water per minute; that the leakage over the plaintiff Allen's dam is still greater; that the amount of water diverted by the defendant village is less than one per cent of the average low-water flow of the stream and not more than one-third of one per cent of the average flow of the stream, and scarcely one per cent of the water wasted by plaintiffs due to leakage of their dams; that it requires about 32,775 gallons of water per minute to run the water wheel of the plaintiff, the Penryhn Company, and 32,288 gallons per minute to run the water wheel of the plaintiff Allen.

*J. B. McCormick* for Granville Electric Light and Power Company, appellant. The defendants contend that there is no controverted question of fact in this action; that the facts upon the trial were conceded and none were disputed, and, therefore, the judgment could not be reversed by the Appellate Division upon the facts, although its order provides that the judgment is reversed upon the law and the facts. (*Westerfield* v. *Rogers,* 174 N. Y. 230, 240; *Otten* v. *M. R. Co.,* 150 N. Y. 395; *Griggs* v. *Day,* 158 N. Y. 1–9; *Hirshfeld* v. *Fitzgerald,* 157 N. Y. 166.) The contention of the plain-

tiffs that by repetition or continuance the acts now charged against the defendants would ripen into an adverse right has no force. (*Strobel* v. *Kerr*, 164 N. Y. 320; *Bullard* v. *S. M. Co.*, 77 N. Y. 525; *Prentice* v. *Geiger*, 74 N. Y. 341; *Colrick* v. *Swinburn*, 105 N. Y. 503.) The plaintiffs are not entitled to the relief asked for in this action for the reason that they have set down and slept upon their rights for fifteen years before asking for any relief and permitted the village of Granville to establish its water works, build a reservoir and lay its water mains and pipes, all within their knowledge; and after the work of establishing such water works has been completed and been in use for a period of fifteen years they then for the first time seek a court of equity to restrain the further use of the water rather than commence an action at law wherein they would have an adequate remedy. (*New York City* v. *Pine*, 185 U. S. 93; *McElroy* v. *Kansas City*, 21 Fed. Rep. 257; *N. H. W. Co.* v. *Wallingford*, 72 Conn. 293; *Calhoun* v. *Miller*, 121 N. Y. 69, 77; *Boyer* v. *East*, 161 N. Y. 580; *Haywood* v. *City of Buffalo*, 14 N. Y. 540; *Costello* v. *Mead*, 55 How. Pr. 356; *Sullivan* v. *P. K. R. Co.*, 94 U. S. 806; *Health Dept.* v. *Purdon*, 99 N. Y. 238; *Trustees, etc.*, v. *Thatcher*, 87 N. Y. 312; *Westphal* v. *City of New York*, 177 N. Y. 140.)

*J. Sanford Potter* for Village of Granville, appellant. The decision of the Appellate Division is reviewable in the Court of Appeals, there being no dispute as to the facts. (*Otis* v. *M. R. Co.*, 150 N. Y. 395; *Hirshfeld* v. *Fitzgerald*, 157 N. Y. 166; *Matter of Totten*, 179 N. Y. 112.) Upon the facts the plaintiffs, as matter of law, are not entitled to an injunction. (16 Am. & Eng. Ency. of Law [2d ed.], 360; *A. K. Co.* v. *Dean*, 162 N. Y. 278; *W. U. T. Co.* v. *S. E. L. & P. Co.*, 178 N. Y. 338; *Smith* v. *City of Rochester*, 38 Hun, 612; *Rider* v. *Amsterdam*, 31 Misc. Rep. 376.) The plaintiffs are in no danger of loss or damage from a continuance of the present use of the water. (*Kensit* v. *G. E. R. Co.*, L. R. [27 Ch. Div.] 122; *Prentice* v. *Geiger*, 74 N. Y. 341.)

*Charles C. Marshall* and *Stephen G. Williams* for respondents. A riparian owner is entitled to an injunction restraining the wrongful diversion of a watercourse, and this whether he utilizes the watercourse or not, and he need prove only nominal damages. (*Corning* v. *T. I. Foundry*, 40 N. Y. 204; *Strobel* v. *K. S. Co.* 164 N. Y. 303; *Gallagher* v. *K. W. Co.*, 25 App. Div. 82; 164 N. Y. 602; *A. K. Co.* v. *Dean*, 162 N. Y. 278.) Even if the damages are slight, where the act complained of is such that by its repetition or continuance it may become the foundation or evidence of an adverse right, a court of equity will interfere by injunction. (*Strobel* v. *K. S. Co.*, 164 N. Y. 303; *A. K. Co.* v. *Dean*, 162 N. Y. 278; *Parker* v. *Griswold*, 17 Conn. 287; *Webb* v. *Portland Co.*, 3 Sumn. [U. S.] 189; *W. & B. C. N. Co.* v. *S. W. W. Co.*, L. R. [9 Ch. App.] 451; *Becket* v. *Morris*, L. R. [1 S. & D.] 47.) If the right to the flow of the stream according to nature is property, the impairment of the flow is *pro tanto* the taking of property. Injunction is the only remedy under the riparian law which can restore such property. (*Uline* v. *N. Y. C. R. R. Co.*, 101 N. Y. 98; *Stowers* v. *Gilbert*, 156 N. Y. 600; Gould on Water [3d ed.], §§ 363, 368, 369, 375; Angell on Watercourses [7th ed.], §§ 389, 394, 395; *Kuntz* v. *McNeal*, 1 Den. 436; *McFarlan* v. *Townsend*, 17 Wend. 440; Wood on Nuisances [3d ed.], § 843; 1 Spelling on Injunction [2d ed.], §§ 273, 305; *Pappenheim* v. *El. R. R. Co.*, 128 N. Y. 436; *Pine* v. *Mayor, etc.*, 103 Fed. Rep. 337.)

Bartlett, J. It is well settled " that the owner of land is entitled to the use of a stream of water which has been accustomed from time immemorial to flow through it, and the law gives him ample remedy for the violation of this right. To divert or obstruct a watercourse is a private nuisance, and the books are full of cases and decisions asserting the right and affording the remedy." (*Gardner* v. *Village of Newburgh*, 2 Johns. Ch. 162 and cases cited. See, also, *United States* v. *Great Falls Mfg. Co.*, 112 U. S. 645; *Standen* v. *New*

*Rochelle Water Co.*, 91 Hun, 272 ; *Gallagher* v. *Kingston Water Co.*, 25 App. Div. 82, 84 ; affirmed, 164 N. Y. 602.)

A riparian owner whose rights are invaded by an appreciable diversion of the water naturally flowing through his premises is entitled to the preventive remedy of injunction if seasonably invoked.   The learned Appellate Division, in reversing the judgment of the Special Term, cites five cases, three of which hold this very elementary doctrine, and two are actions at law.   The equity cases cited involved substantial diversion and damages.   None of them presents a state of facts disclosed by the present record.

Recognizing to the fullest extent the discretion vested in the Supreme Court in issuing or refusing an injunction, nevertheless this power is not absolutely unlimited, as it frequently happens that facts are proved which raise questions of law reviewable by this court.   Questions are now presented which, in my opinion, should lead to the reversal of the judgment of the Appellate Division, leaving the plaintiffs to their remedy at law for damages.

The order of the Appellate Division states that the judgment of the Special Term was reversed on the law and the facts.   There is no disputed question of fact in this case, nor are there conflicting inferences to be drawn from the facts, that should control the disposition of this appeal.   Counsel for plaintiffs admits in his brief that no difference exists between the parties in respect to the facts.   We have frequently held that the insertion in the order of reversal that it is upon the facts does not raise a question of fact unless an examination of the record confirms it.

In *Smith* v. *City of Rochester* (92 N. Y. 463) the action was brought by the plaintiffs, owners of mills and manufactories situated on the bank of Honeoye creek to restrain the defendant from diverting the waters of Hemlock lake from the creek.   The defense proceeded upon the theory that Hemlock lake, being a navigable body of water, as such with its bed belonged to the state, which possessed the consequent right of authorizing the appropriation of its waters by its

agents or grantees for any public use without regard to the rights of individuals who may have previously acquired proprietary interests therein.   The city of Rochester sought, by establishing this defense, to justify the diversion from Hemlock lake of a large quantity of water taken through a conduit leading directly from the lake to the city.   After finding various facts, the conclusion of law was reached that the state in its sovereign capacity was the owner of Hemlock lake and had full right to grant and convey the same to the city ; this resulted in a dismissal of the complaint on the merits, and a judgment to that effect was affirmed by the General Term. This court reviewed the question of the extent of the ownership of the state in Hemlock lake and held that the plaintiffs were entitled to prove their damages and that the dismissal of the complaint was error.

At page 487 Ruger, Ch. J., said : " The evidence in this case tended to show that the plaintiffs were injured by the act of the defendant in diverting the water of Honeoye creek, which had theretofore been accustomed to flow in its channel to the benefit of the mill owners on that stream.   *   *   * This is exclusively a question for the consideration of the trial court.   It is enough that the plaintiffs have a clear legal right which has been invaded and the right to try the question of the extent of their injury has been denied them.   It is possible that upon all the circumstances of the case the courts below may, in the exercise of their discretion, deny a remedy by injunction, or grant it upon terms and conditions such as in their judgment will best preserve the rights and interests of the parties.   But the plaintiffs have an undoubted right to the exercise of such discretion by the court.   This has been refused them, and for that reason a new trial must be ordered."

This was an equity action in which the plaintiffs invoked the exercise of the discretion of the trial court on the question whether the water in Honeoye creek had been diverted and they, therefore, entitled to an injunction.   The trial court refused to exercise this discretionary power, for the reason that it found, as matter of law, that the state of New York

vested in the city a right to make such diversion without regard to the proprietary interests of the plaintiffs. This court held the conclusion error and compelled the exercise of the discretionary power by the Supreme Court.

In the case at bar the plaintiffs invoked the exercise of the discretion of the Supreme Court concerning the alleged diversion of water from a stream on which they were riparian proprietors, and prayed that the defendants might be perpetually enjoined. The defendants denied diversion and alleged lawful use of the stream. The trial court found, in substance, no appreciable diversion and that the village of Granville had taken since 1885, and continues to take, from the stream above the plaintiffs' dams, water daily for use among its inhabitants and for public purposes; and as a conclusion of law that the defendants were entitled to judgment dismissing the complaint; thereupon judgment was entered dismissing the complaint upon the merits. The point is whether this court has the power to review the action of the trial court and determine if there is a question of law on the facts found to the effect that the laches of the plaintiffs estopped them from maintaining a suit in equity for a permanent injunction without regard to the diversion of water from the stream, which was found in substance to be merely nominal.

The village of Granville constructed a system of water works in order to supply its inhabitants with water in the year 1885, and has been operating it ever since. This action was commenced on the 31st day of July, 1900. It thus appears that for nearly fifteen years these plaintiffs slept upon their rights. They or their predecessors in title made no protest when the village of Granville was expending money in erecting its water works system and providing the necessary means for supplying the village with pure and wholesome water daily.

The questions of laches and estoppel may be considered together, as they are both established by the long delay in instituting this suit for an injunction. This point has recently been considered by the Supreme Court of the United States

in *New York City* v. *Pine* (185 U. S. 93). The main point of this decision is that the time at which a party appeals to a court of equity for relief affects largely the character of the relief which will be granted. This was a suit commenced in the Circuit Court of the United States for the southern district of New York by Pine and others against the city of New York, praying an injunction to restrain the city from maintaining a dam on the west branch of Byram river and diverting the waters from their natural flow through the farms of plaintiffs. The facts are these: Byram river is a non-navigable stream of fresh water flowing into Long Island sound. Tracing its source up stream from the sound for a short distance, it forms the boundary between New York and Connecticut, then deflects to the east, and for some five or six miles is within the state of Connecticut. A few hundred feet from the state line the city of New York, under legislative sanction, commenced the construction of a dam, with the view of appropriating part or all of the waters of the west branch and using the same for the supply of the city. The watershed of this west branch above the dam, the territory from which the water sought to be appropriated is all drawn, is wholly within the limits of the state of New York. The plaintiffs owned farms situated on Byram river in Connecticut. The answer of the city admitted the building of the dam, and averred among other things that it was a great and permanent benefit to the citizens and residents of New York, and that it was and always had been able and willing to pay any damages that the complainants might suffer from being deprived of the natural flow of water. It is admitted that the work on the dam had been under way for two years when the suit was commenced.

Mr. Justice BREWER, in opening his opinion, states that it would be assumed, without deciding, that the plaintiffs would suffer substantial damage by the proposed diversion of water; that the sources of the water supply were within the state of New York; that the plaintiffs had a legal right to the natural flow of waters through their farms in

the state of Connecticut, and could not be deprived of that
right for the benefit of the city of New York; that a court
of equity, at the instance of the plaintiffs, at the inception
of and before any action had been begun by the city of New
York, would have restrained all interference with such natural
flow of the water.

It is to be observed that these facts are very much like
those in the case at bar, except that there is in the case cited
a substantial diversion and damage, while in this case we have
the important difference, an infinitesimal diversion resulting
in nothing more than nominal damages and a much greater
lapse of time before suit for injunction was begun.

Mr. Justice BREWER then goes on to state as follows:
"Notwithstanding these assumptions, we are of opinion that
the decree ought not to stand, and for these reasons: This is
not a case between two individuals in which is involved
simply the pecuniary interests of the respective parties. On
the one side are two individuals claiming that their property
rights are infringed — rights which can be measured in money
— and that not a large sum; on the other, a municipality
undertaking a large work with the view of supplying many of
its citizens with one of the necessities of life. According to
the averments in the bill the city had been engaged in this
work for two years and had nearly completed the dam.
While the near completion is denied in the answer, there is
no denial of the time during which the city had been engaged
in the work, and it stands as an admitted fact that for two
years prior to the commencement of this suit the work had
been under way. * * * It is one thing to state a right
and proffer a waiver thereof for compensation and an entirely
different thing to state the same right and demand that it
should be respected. In the latter case the defendant acts at
his peril. In the former he may well assume that payment of
a just compensation will be accepted in lieu of the right. In
the latter the plaintiff holds out the single question of the
validity and extent of the right; in the former he presents
the right as the foundation of a claim for compensation, and

his threat to enforce the right if compensation is not made is simply a club to compel payment of the sum he deems the measure of his damages. * * * If the plaintiffs had intended to insist upon the strict legal rights (which, for the purposes of this case, we assume they possess), they should have commenced at once, before the city had gone to expense, to restrain any work by it. It would be inequitable to permit them to carry on negotiations with a view to compensation until the city had gone to such great expense, and then, failing to agree upon the compensation, fall back upon the alleged absolute right to prevent the work. If they had intended to rest upon such right and had commenced proceedings at once, the city might have concluded to abandon the proposed undertaking and seek its water supply in some other direction. * * * The time at which parties invoke the aid of a court of equity is often a significant factor in determining the extent of their right. *Vigilantibus non dormientibus æquitas subvenit* is a maxim of equity."

The principle so clearly stated by the learned justice is supported by an abundance of authority. (*Smith* v. *Clay*, 3 Brown's Ch. 639, note; *Galliher* v. *Cadwell*, 145 U. S. 368, and cases cited; *Roberts* v. *Northern Pacific R. R. Co.*, 158 U. S. 1, and cases cited; *Penn Mutual Life Ins. Co.* v. *Austin*, 168 U. S. 685; *Northern Pacific R. R. Co.* v. *Smith*, 171 U. S. 260; *Provolt* v. *Chicago, R. I. & Pacific R. R. Co.*, 57 Mo. 256, 264; *Charleston & W. C. Railway Co.* v. *Hughes*, 105 Ga. 1; *Atlanta, Knoxville & Northern R. Co.* v. *Barker*, 105 Ga. 534; *Chicago, Burlington & Quincy R. R. Co.* v. *Englehart*, 57 Neb. 444.)

The question here involved has been considered by the courts of several other states. In the case of *City of Logansport* v. *Uhl* (99 Ind. 531) it was held: " Where the owner of a water power stands by, and, not objecting, permits a city, without first assessing and paying his damages, to erect works for a water supply by drawing water from the stream and thus diminishing his power, he creates an equitable estoppel, so that he will not be protected by injunction, but

will be left to assert his rights at law." At page 539 the learned court said: "An injunction ought not therefore to be granted when it would be against good conscience or productive of great hardship, oppression or injustice, or of public or private mischief. (1 High on Injunctions, § 15 ; Goddard on Easements, 368 ; *Sheldon* v. *Rockwell,* 9 Wis. 166 ; *Pettibone* v. *LaCrosse R. R. Co.,* 14 Wis. 479 ; *Cobb* v. *Smith,* 16 Wis. 661 ; 2 Barbour Ch. Prac. § 608, note 4 ; *Owen* v. *Field,* 12 Allen, 457 ; *Reddall* v. *Bryan,* 14 Md. 444.)"

In *Fisk* v. *City of Hartford* (70 Conn. 729) the head note reads, in part, as follows : "If the laches of a party make it difficult or impossible for the court to enjoin his adversary without inflicting great injury thereby, an injunction should be refused and the party be left to his remedy at law. A riparian mill owner who has for many years knowingly permitted a city to take its water supply in gradually increasing quantities from the head waters of the stream, by means of expensive reservoirs and distributing mains, is not entitled to an injunction to restrain such diversion."

Many of the cases cited recognize what has been termed " the law of paramount necessity ; " that is, the right of municipalities to secure an abundant supply of pure and wholesome water for daily use in domestic life, the flooding of sewers in preserving the public health and the extinguishment of fires.

Story's Equity Jur. (13th ed.) § 959a states: " * * * Thus for example, no injunction will be granted to restrain a nuisance by the erection of a building where the erection has been acquiesced in or encouraged by the party seeking the relief. So it will not be granted in case of gross laches or delay by the party seeking the relief in enforcing his rights ; as, for example, where, in case of a patent or copyright, the patentee has lain by and allowed a violation to go on for a long time without objection or seeking redress."

In the view I take of this case it was not necessary for the trial court to examine the question of the alleged diversion of water and, in the exercise of discretion, determine whether the prayer for a perpetual injunction should be granted, as

the undisputed facts created an estoppel which necessitated a dismissal of the complaint. The plaintiffs were placed in a position by their conceded acquiescence that closed to them the door of a court of equity.

The plaintiffs, respondents, argue another point of law on their brief, to the effect that even if the damages are slight, where the act complained of is such that by its repetition or continuance it may become the foundation or evidence of an adverse right, a court of equity will interfere by injunction. It is argued that after twenty years the plaintiffs might find themselves in the situation of the village having acquired a prescriptive right to draw from the river an indefinite quantity of water for municipal use.

This proposition involves a misconception of the rule of law applicable to this situation. To constitute a right by prescription there must have been an adverse, continuous and uninterrupted exercise of the right for twenty years without substantial change; a party cannot within the twenty years enlarge the use and at the expiration of that time claim the use as so enlarged. (*Prentice* v. *Geiger,* 74 N. Y. 341, 347.) It thus appears that the village can acquire no indefinite prescriptive right. The further answer is that the plaintiffs have an adequate remedy at law in an action for damages if any can be proved.

The order of the Appellate Division should be reversed and the judgment and order of the Special Term affirmed, with costs to each of the appellants in all the courts.

Cullen, Ch. J., Gray, O'Brien, Haight, Vann and Werner, JJ., concur.

Order reversed, etc.