THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK

*v.*

CHESTNUT HILL LAND COMPANY.

[Decided February 24th, 1910.]

1. Where the defendant had instituted three actions at law for damages against different municipalities for decreasing the flow of a river, it was no ground for enjoining such suits and transferring the controversy to equity to avoid a multiplicity of suits that the actions at law would determine nothing but the amount of damages suffered by defendant for the past six years, and that there would or might be other similar actions brought in the future; the municipalities being able to prevent such actions by instituting proceedings to condemn.

2. Because a tort is continuing, and will result in successive actions at law, does not entitle the wrong-doer to enjoin such actions, and have the controversy determined in equity.

3. Where a property right is invaded by a corporation having the power of eminent domain, but there is no agreement, no inequitable conduct, no possession demanded, and nothing but the invasion of a legal right shown for which damages are sought at law, equity will not assume jurisdiction against the objection of the party injured.

4. Where defendant brought several suits against municipalities to recover damages for interfering with the flow of a river, the mere complexity of the questions involved was insufficient to justify a transfer of the controversy to equity.

5. Where a river was polluted by the sewers of a city and by several factories located along its banks above defendant's land, each was liable for the results of its own pollution only. In the case of several independent tort-feasors, each is responsible only for his own act.

6. In an action at law by a riparian proprietor to recover damages for excessive abstraction of water by upper proprietors, laches is no defence.

*Mr. Herbert Boggs, Mr. Michael Dunn* and *Mr. William H. Corbin,* for the complainant.

*Mr. John W. Griggs,* for the defendant.

STEVENS, V. C.

This is an application by the city of Newark to enjoin an action of tort commenced against it by the defendant land company. The land company is a riparian owner on the Passaic within the corporate limits of the city of Paterson, and avers in its declaration that Newark has for the past six years withdrawn water from the Pequannock river, one of the tributaries of the Passaic, in such quantities as materially to affect the flow of the last-named stream, to its damage $50,000. It has also brought similar suits against the city of Jersey City and the East Jersey Water Company. The two municipalities and the water company have filed separate bills to restrain these suits and to draw the litigation into this court—*first,* on the ground of avoiding a multiplicity of suits; *secondly,* because of the complexity of the problems involved; and *thirdly,* on the ground of laches. I do not think either of these grounds tenable.

First, as to avoiding a multiplicity of suits.

The land company has brought three suits at law against three independent corporations. It is not proposed to consolidate these suits into one and thus avoid a multiplicity of actions. It is proposed to have three suits in equity in their place. It is said that the actions at law will determine nothing but the amount of damages suffered by the land company for the past six years, and that there will or may be other similar actions brought in the future. The obvious answer is, that Newark and Jersey City

may, at any time, institute proceedings to condemn, and that will prevent such actions. Besides, it has never been held that because the tort is continuing, the wrong-doer may come into this court. The privilege of so coming is, under some restrictions, that of the party injured and not of the party injuring. Says Chief-Justice Beasley, in *Society* v. *Lehigh Valley Railroad Co., 32 N. J. Eq. (5 Stew.) 329:* "Nor have I been able to find any authority for the doctrine that equity should intervene in order to avoid that multiplicity of suits that would be incident to the continuance of the legal jurisdiction. The rule is entirely settled that in case of private nuisance, the person injured may vindicate his rights by repeatedly suing the wrong-doer in a court of law."

The cases cited by the counsel of the several complainants are not in point. Those principally relied on are *Trenton Water Power Co.* v. *Chambers, 9 N. J. Eq. (1 Stock.) 476; North Hudson Co.* v. *Booraem, 28 N. J. Eq. (1 Stew.) 450; New York and Greenwood Lake Railroad Co.* v. *Stanley, 35 N. J. Eq. (8 Stew.) 283; Paterson* v. *Kamlah, 42 N. J. Eq. (15 Stew.) 93; 47 N. J. Eq. (2 Dick.) 331; Speer* v. *Erie Railroad Co., 68 N. J. Eq. (2 Robb.) 616; New York City* v. *Pine, 185 U. S. 93.* With the exception of the last two, these were cases in which possession had been taken by consent or agreement, and by companies which had the power to condemn. The landowner was seeking inequitably to obtain possession after a long lapse of time and after works had been constructed. It was held that what the defendants were justly entitled to was compensation and not the property in its altered condition. The *Speer Case, supra,* is really an authority for the land company. Speer came into this court and asked for an injunction to restrain the company from obstructing his right of passage as he had theretofore enjoyed it. The court of errors and appeals denied him the relief that he asked, but said that he was entitled to compensation and expressly reserved to him his right to bring a suit at law, if he so desired. So in the *Pine Case,* while the supreme court of the United States refused to give the complainant an injunction to restrain the city of New York from interfering with the flow of the stream past his land, they gave him, at his

election, the right to have his damages assessed by a jury. In *Sparks Manufacturing Co.* v. *Newton, 57 N. J. Eq. (12 Dick.) 393; 60 N. J. Eq. (15 Dick.) 399,* jurisdiction was taken expressly on the ground that both parties had agreed to its exercise. In *Penrhyn Slate Co.* v. *Electric Light and Power Co., 181 N. Y. 80,* a municipality had diverted water fifteen years before. The court refused an injunction, but said that if there were any damages the landowner had an adequate remedy at law.

The distinction seems to be this: Where there is an agreement or inequitable conduct or a question of the public welfare, there, at least in cases where the power of condemnation exists, equity may, in lieu of possession, give compensation. But where there is no agreement, no inequitable conduct, no possession demanded and nothing but the invasion of a legal right shown for which damages are sought at law, equity will not, against the objection of the party injured, assume jurisdiction to the exclusion of the law court, even though the corporation invoking its aid has the power to condemn. The argument addressed to me on behalf of complainants fails to take account of the distinction pointed out by Chief-Justice Beasley in *Society* v. *Lehigh Valley Railroad Co., 32 N. J. Eq. (5 Stew.) 342.* He says: "In all these cases [he was speaking of persons entitled to the use in common of a stream of water] the equitable jurisdiction was undoubted, as it was invoked *by the party injured.* In such cases courts of equity and courts of common law have concurrent jurisdiction, and, consequently, the complainant may seek either forum. That his relief may not be as complete in the forum which he chooses as it might have been in another forum, is a matter for his own consideration, and not for that of his adversary. The power to take charge of the given case being co-ordinate, neither court can assume a paramount authority and compel an unwilling suitor to come to it for protection." And Justice Depue, in *Lehigh Valley Railroad* v. *McFarlan, 31 N. J. Eq. (4 Stew.) 754,* thus expressed himself: "The appropriate relief against successive suits by the same plaintiff for damages arising from an injury which is continuous, is by application for the consolidation of actions, or for a stay of proceedings, and not by

bill in chancery, unless the right in controversy has once been determined adversely to the plaintiff."

Of course, where there is no right to condemn, there is the added objection that the complainant cannot compel his adversary to accept compensation as a substitute for the right invaded. *Stout* v. *Portland Cement Co., 76 N. J. Eq. (6 Buch.) 518; Beach* v. *Sterling Iron Co., 54 N. J. Eq. (9 Dick.) 66, 79.*

It is urged, in the second place, that the court should assume jurisdiction because the case is so complex that a jury cannot properly consider it. Complexity is no ground, *per se,* of equitable jurisdiction. Says Chief-Justice Beasley, in the case already quoted (*Society* v. *Lehigh Valley Railroad Co.*): "I cannot think that because the questions involved in this controversy are of magnitude or are intricate or difficult of solution, that therefore the courts of law can be divested of their jurisdiction over them. It does not appear that the importance of the matters in dispute have ever been regarded as affording any test of the cognizance of a court of equity." The cases relied upon (*Cranford* v. *Watters, 61 N. J. Eq. (16 Dick.) 284,* and *American Central Insurance Co.* v. *Landau, 62 N. J. Eq. (17 Dick.) 73*) involved a voluminous account, and account is one of the subjects of equitable cognizance.

The land company is the owner of forty-five acres of riparian land. The land is unimproved and lies about four miles above the Dundee dam. This dam, according to Mr. Gardner's affidavit, "sets the water back four and one-half miles in the river to a point one-half a mile above defendant's land," in such a manner that

"the level of the water in times of low or moderate flow in front of defendant's property is governed more by the draft of water from the mill pond than by the natural flow of the stream,"

and the water, he says, is not allowed to drop more than twelve inches below the level of the dam, "although sometimes, in dry weather, it drops a little more." There is no appreciable fall of the river as it flows past defendant's land, and therefore no question of water power. The Passaic has a tributary drainage area

of about eight hundred square miles; a minimum flow of one hundred and eighty million gallons per day; an average flow throughout the year of one thousand million gallons per day and a maximum flow in flood times of not less than thirty thousand million gallons per day. The amount taken by Newark is thirty-five million gallons per day; by Jersey City, forty million gallons, and by the East Jersey Water Company, for the use of the smaller municipalities—Montclair, Bayonne, &c.—eight million gallons. The question is, how does the withdrawal of this amount of water affect the flow of the stream as it runs past defendant's land, and if the flow be diminished, is the land injuriously affected by the diminution? Defendant's counsel thus states the problem: Determine the damage for the entire injury resulting from the abstraction of the eighty-three million gallons and then apportion it in the proportion of thirty-five eighty-thirds for Newark; forty eighty-thirds for Jersey City and eight eighty-thirds for the East Jersey Water Company. It is evident that the problem is not so easily solved. Counsel assumes actual damage; but it does not follow that because eighty-three million gallons are taken from the stream or its tributaries, the defendant is necessarily injured. It has no property right in the water; only in the flow. In the words of Chief-Justice Gummere, in *Doremus* v. *Paterson*, 65 N. J. Eq. (20 Dick.) 712: "It is entitled to have the waters flow past its land undiminished in quantity and unimpaired in quality by the act of any other of the owners." On proof that the upper owner withdraws more than he needs for domestic and other legitimate uses connected with the land itself, the lower owner is entitled to nominal damages. If he would recover more he must show actual injury. In the case of a piece of unimproved land, with no water power, actual or potential, and with the water maintained at a nearly constant level by the dam below, it may be open to question whether a diminution in the flow causes much or any real injury. But more than this, the assumption of diminution in the flow may not, in the case of Jersey City and Newark, be in accordance with the fact. These municipalities take their water from reservoirs filled in times of flood or high water. Mr. Gardner, speaking for Jersey City, and Mr. Sherrerd, for Newark, say that in

times of very dry weather they allow an amount equivalent to the ordinary dry weather flow to escape from their reservoirs. Of course, all that the riparian owner is entitled to is the customary flow. In times of flood it would be rather a benefit to the land to have some of the water withdrawn from it; in times of high water the diminution of flow could hardly be felt; in times of low water only could there be any appreciable injury, and even then that injury would be non-existent in the case of Newark and Jersey City, if the equivalent of the low-water flow should be permitted to flow from the reservoirs. We must take account, too, of the modifying influence of the dam. It is thus seen that the question is one of considerable complexity, but after all, one, only, of unliquidated damages to be determined, under the above authorities, by the courts of law.

I have altogether omitted any reference to the pollution of the river by the Paterson sewers and by the factories which discharge their waste products into the river above the defendant's land. This does not add to the complexity of the problem, for it is clear that the complainants are not responsible for the damage thereby caused. In the case of several independent tort-feasors, each is responsible for his own act only. Even if the sewage be not so much diluted, and, consequently, more offensive to those who dwell along its banks, it is Paterson and the factories that are responsible for the pollution, and not Newark or Jersey City, or the East Jersey Water Company. In *Doremus* v. *Paterson,* 70 N. J. Eq. (4 Robb.) 296; on appeal, 71 N. J. Eq. (1 Buch.) 789, the city of Paterson, as a defence to the suit of the riparian owners, filed a cross-bill, making Newark and Jersey City parties on the ground that they were contributing to the injury by taking water that would otherwise have helped to lessen the nuisance. On application of the complainants the cross-bill was stricken out.

But one other question remains to be considered, that of laches. It is said that this court should interfere because of the long acquiescence of the land company. Laches would be an equitable defence to a suit brought by the landowner to restrain Newark or Jersey City from abstracting the water. It is not a defence to the action at law. There the statute of limitations limits the re-

covery. In a case like the present, the land company cannot bring ejectment. It must come to this court for an injunction if it would seek to regain the full flow of the river. But if it does so, it may be met by those equitable defences which prevailed in the cases already cited. There is no equity that would restrain it from recovering damages for such injury as it may prove it has suffered for the last six years, but there may be an equity that would prevent it from depriving the people of Newark and Jersey City of the use of the water in time to come, if those municipalities are willing to make compensation for what they propose to take.

The application should be denied.