**MONTREY et al. v. PETER J. SCHWEITZER, Inc. et al.**

Civ. No. 989.

United States District Court
D. New Jersey.

June 13, 1952.

---

710

Joseph T. Karcher, Sayreville, N. J., for plaintiffs.

Cox & Walburg, Newark, N. J., Harry E. Walburg, Newark, N. J., of counsel, for Peter J. Schweitzer, Inc.

Toolan, Haney & Romond, Perth Amboy, N. J., John E. Toolan, Perth Amboy, N. J., of counsel, for Anheuser-Busch, Inc., and Henry Menzenwerth.

FORMAN, Chief Judge.

This is a motion to remand the suit to the Superior Court of New Jersey upon the ground that this court is without jurisdiction because diversity of citizenship does not exist between the plaintiffs and all of the defendants and the complaint does not set forth as to any of the defendants a separate and independent claim or cause of action.

The plaintiffs in this case are Perrie W. Montrey and 80 other individuals, all of whom are citizens of New Jersey, residing in the village of Old Bridge, Middlesex County. There are four defendants: Peter J. Schweitzer, Inc., which owns a manufacturing plant in Spotswood, Middlesex County, New Jersey, a New York corporation; its plant manager, Ardell Lowing, a citizen of New Jersey; Anheuser-Busch, Inc., which owns a factory in East Brunswick Township, New Jersey, a Missouri corporation, and its plant manager, Henry Menzenwerth, alleged by plaintiffs to be a resident and citizen of New Brunswick, New Jersey, although he contends he is a citizen of Missouri.

The gravamen of this suit is that by reason of the pollution of South River in Middlesex County, a condition attributed in the complaint to the activity of all four defendants, the plaintiffs have sustained damages to their realty and injury to their persons. The original complaint filed in the State court consisted of 118 counts. The basic allegations of the complaint are set forth in the first two counts and are repeated by reference in the remaining counts, which are patterned on these basic ones.

The first count of the complaint alleges that a plaintiff, for the past six years, was the owner of a dwelling and land in Old Bridge, New Jersey, a village located on or near the South River or its tributaries, which are natural, navigable or flowing streams; that the defendants

"have owned, operated and maintained a factory or manufacturing plant in Spotswood, New Jersey and in East Brunswick Township, New Jersey, respectively, which are located higher up on the South River and closer to its source, and in connection with said ownership, operation and maintenance have constantly throughout said six-year period willfully, wantonly, knowingly, unlawfully, tortiously discharged into said South River and its tributaries large quantities of acids, alkalies, sulfides, organic and inorganic waste matter and other obnoxious, deleterious and poisonous liquids, chemicals, sewage, effluent and industrial wastes and have thus gravely, seriously and permanently polluted said streams as well as its bed and banks, causing the same to be saturated with said sewage residue so that the said River and its tributaries in and near the vicinity of plaintiff's dwelling constantly gives off a vile, putrid, obnoxious, offensive, sickening and unhealthful stench

which envelops the atmosphere in and about plaintiff's dwelling, causing a personal and private nuisance to plaintiff's great pain, injury and damage.";

that the plaintiff has sustained substantial injuries over and above that suffered by the general public; and that as a direct and proximate result of the creation of said nuisance the plaintiff's dwelling and lands have been seriously and permanently damaged and have greatly depreciated in value, wherefore the plaintiff demands as compensatory and punitive damages the sum of $10,000. The second count similarly charges the four defendants with the creation of the said nuisance and that as a result thereof plaintiff has suffered impairment of his health and has been deprived of the relaxation, recreation and enjoyment of his residence and seeks as damages for said injuries to his person the sum of $5,000 covering a two year period.

Prior to the filing of the petition for removal by certain of these defendants, an amended complaint was filed in the State court, but was not served upon the defendants until after the petition for removal was filed. The only change occasioned by the amended complaint was the addition of the words "jointly and concurrently" or "joint and concurrent" to characterize the actions of the defendants.

The defendant, Peter J. Schweitzer, Inc., alone, and the defendants Anheuser-Busch and Henry Menzenwerth, jointly, filed separate petitions for removal and alleged as their grounds that the two plant managers had no connection with or responsibility for the design, construction and operation of their respective plants and that while Ardell Lowing was a resident of New Jersey, his joinder as a party was "sham, fraudulent and not done in good faith, but for the obvious purpose of preventing the removal of this cause to the United States District Court for the District of New Jersey;" they further averred that Henry Menzenwerth was a citizen of Missouri; that the two corporate defendants are completely separate and independent corporate entities and that neither corporation has

the right, power or authority to direct the disposition of industrial waste by the other; that any such alleged discharge of waste material from said respective plants into the South River is independent and separate, and that, consequently, the complaint contains, at least, against Anheuser-Busch, Inc. and Henry Menzenwerth, a separate and independent claim or cause of action which would be removable under 28 U.S.C. § 1441(c) even if it is joined with the nonremovable claim or cause of action against the resident defendant Ardell Lowing.

In support of their petition for removal and in opposition to the motion to remand the defendants have submitted a number of affidavits; while the plaintiffs in support of their motion to remand have submitted two affidavits, one by a plaintiff and the second by counsel for plaintiffs.

The motion to remand and the petitions for removal raise two basic issues:

(1) is a separate and independent claim or cause of action alleged in the complaint against a non-resident defendant; and

(2) is there a fraudulent joinder of a resident defendant?

Assuming, arguendo, that the defendant Menzenwerth is not a citizen of New Jersey, is the cause of action against Anheuser-Busch and Menzenwerth separate and independent from that against the Schweitzer company and its plant manager, Lowing, and thus removable under § 1441(c)?

Section 1441(c) provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

What constitutes a "separate and independent" claim or cause of action has been the subject of two recent opinions by

this court.[1] Unfortunately, the borderline nature of the instant case does not permit its summary disposition by mere reference to these prior holdings. Although a federal district court must be ever vigilant against improper assumption of its jurisdiction, nevertheless it should not by virtue of the separate and independent clause in § 1441 (c) establish unwarranted and insurmountable barriers to a proper exercise of federal jurisdiction. Hence the necessity for a further excursion into this problem.

Our inquiry is directed to whether there is a "single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions", and "in making this determination we look to the plaintiff's pleadings, which controls." American Fire & Casualty Co. v. Finn, 341 U.S. 6, 13, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702.

◼ In the South Amboy cases[2] we stated that the emphasis in ascertaining whether claims are separate and independent is on the existence of a "single wrong" rather than the nature of the liability since there could be non-separate and independent claims against multiple defendants in one complaint whether liability is alleged as joint or several or in the alternative. Whether there is but a single wrong is determined by reference to the substantive law of the state where the wrong and injury occurred. Bentley v. Halliburton Oil Well Cementing Co., 5 Cir., 174 F.2d 788; Edwards v. E. I. Du Pont de Nemours & Co., 5 Cir., 183 F.2d 165. However, where there is a right under state law to sue all defendants as joint tort-feasors, even though a separate defense may defeat a joint recovery, our inquiry ends since joint liability for the whole tort negatives the idea of a separate and independent claim as against one of the defendants. Bentley case, supra, 174 F.2d at page 793.

◼ A plaintiff cannot, by mere conclusory allegations, state a joint cause of action against all defendants where the facts pleaded obviously negate such legal conclu-

sion, but "if the complaint is filed in good faith, the cause of action, for the purposes of removal, may be deemed to be that which the plaintiff has undertaken to make it". Wecker v. National Enameling & S. Co., 204 U.S. 176, 27 S.Ct. 184, 187, 51 L.Ed. 430. The cases are legion that even though separate suits may be brought if the plaintiff has the right to proceed jointly against all defendants under state law then as master of his pleadings, his is the right of election to file a joint action even though done to prevent removal. See, for example, Wecker case, supra.

◼ In determining this issue defendants contend that the original, rather than the amended, complaint governs, since the amended complaint, although filed in the State court prior to the filing of the petition for removal, was not served on the attorneys for the defendants until subsequent to the removal proceedings. Admittedly, the right of removal is to be resolved according to the plaintiff's pleadings at the time of the petition for removal. Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334.

We note that under the New Jersey Rules of Civil Practice, the filing of a complaint with the court commences a suit, Rule 3:3–1, and that a plaintiff may amend his pleadings as a matter of course at any time before a responsive pleading is served. Rule 3:15–1. However, it becomes unnecessary to decide which pleading controls since I agree with plaintiffs that the language of the original complaint was sufficiently broad to have included that which was expressly alleged by the amendment, namely, that the acts of the defendants were joint and concurrent. The Rules of Civil Practice of New Jersey have been patterned to a large extent after the Federal Rules and their requirements similarly direct that pleadings should be simple and concise without the necessity of technical forms. See Rule 3:8–5. The absence of such express allegations would not have precluded plaintiffs in the State courts

---

1. Board of Education of the Township of Marlboro in the County of Monmouth v. Hartford Fire Insurance Company, D. C., 105 F.Supp. 697; Boncek v. Penn-sylvania Railroad Co. et al., and similar cases (South Amboy cases) D.C., 105 F. Supp. 700.

2. See footnote number 1.

from showing that the acts of defendants were joint and concurrent. In Bentley v. Halliburton Oil Well Cementing Co., supra, 174 F.2d at page 790, the court, in holding that the failure to use the word "concurrent" was not decisive if the factual allegations contained the same meaning, stated:

"While good pleading may have warranted the alleging of concurrent negligence as an ultimate fact, the absence of such an allegation was not material, since the facts actually alleged constituted the only evidence necessary to prove concurrent negligence as the proximate cause of the injury."

See also Willoughby v. Sinclair Oil & Gas Co., 10 Cir., 188 F.2d 902, 906.

The defendants further assert that regardless of the allegations that the defendants jointly and concurrently committed a nuisance, the affidavits annexed to the petitions for removal and submitted upon this motion show beyond dispute that the acts of the two corporate defendants in allegedly discharging industrial waste and sewage into the South River were completely independent and without the concurrence of each other; that under the law of New Jersey and the weight of authority elsewhere the alleged liability of defendant Anheuser-Busch and its plant manager (if liable at all) is separate and independent from that of the defendant Schweitzer and its plant manager; and that therefore the complaint contains separate and independent claims against these defendants. It is to be admitted that the weight of authority seems to hold that where a river is polluted by several factories located along its banks each is an independent tort feasor, and that, since it has independently polluted the stream, each is liable for the results of its own pollution only and cannot be held jointly liable. See annotations, 91 A.L.R. 763; 35 A.L.R. 412; 9 A.L.R. 947; 66 C.J.S., Nuisances, § 89, p. 848. But, there are holdings to the contrary. See 91 A.L.R. 764; 9 A.L.R. 950; 66 C.J.S., Nuisances, § 89, p. 848.

However, the only New Jersey case cited by the defendants and which they contend is in line with the weight of authority is the case of City of Newark v. Chestnut Hill Land Co., 1910, 77 N.J.Eq. 23, 75 A. 644. That suit was a proceeding in equity by the City of Newark to enjoin an action of tort commenced against it by the defendant land company which averred that Newark had withdrawn water in such large quantities from the river that it materially affected the flow of the stream to its damage. One of the grounds alleged by the City of Newark in support of its application for an injunction was the complexity of the problem involved. After stating that this did not present a tenable ground to support the application the court added the following language, relied upon by the defendants here to support their position, viz.:

"I have altogether omitted any reference to the pollution of the river by the Paterson sewers and by the factories which discharge their waste products into the river above the defendant's land. This does not add to the complexity of the problem, for it is clear that the complainants are not responsible for the damage thereby caused. In the case of several independent tort-feasors each is responsible for his own act only. Even if the sewage be not so much diluted, and, consequently more offensive to those who dwell along its banks, it is Paterson and the factories that are responsible for the pollution, and not Newark or Jersey City or the East Jersey Water Company. In Doremus v. [city of] Paterson, 70 N.J.Eq. (4 Robb.) 296, 62 A. 3; on appeal, 71 N.J.Eq. (1 Buch) 789, 71 A. 1134, the city of Paterson, as a defence to the suit of the riparian owners filed a cross-bill making Newark and Jersey City parties on the ground that they were contributing to the injury by taking water that would otherwise have helped to lessen the nuisance. On application of the complainants the cross-bill was stricken out." 77 N.J.Eq. at page 29, 75 A. at page 647.

The foregoing quotation, however, states only that those who discharge their waste products into a river are responsible for the pollution and not those who may with-

draw excess water from the river. Doremus v. Paterson, 1905, 70 N.J.Eq. 296, 62 A. 3, cited therein, merely holds that a defendant in a suit to restrain it from polluting a river cannot, by a cross-bill, bring in other parties who have allegedly diverted the flow of water since it would be no defense that the acts of others contributed to the nuisance, because as between "independent" (sic 70 N.J.Eq. at page 299, 62 A. 4) wrong doers there is no contribution.[3]

In any event I am not persuaded that the City of Newark case, supra, propounds the proposition of law that under *all* circumstances each party polluting a river is liable in damages in proportion only as its wrongful acts have contributed to the injury sustained, and that under *no* circumstances can the tort be joint.[4]

We are adopting the assumption that the New Jersey court viewed the tortious acts of, and injury produced by, those who polluted the water as distinct and disconnected from the tort and injury created and produced by those who withdrew excess quantities of water from the river.

See, also (in the automobile tort field) La Bella v. Brown, 1927, 103 N.J.L. 491, 103 N.J.L. 493, 133 A. 82, 135 A.L.R. 918; but cf. Owens v. Cerullo, 1931, 155 A. 759, 9 N.J.Misc. 776. "But when each of two or more persons owes to another a separate duty, which each wrongfully neglects to perform, then, although the duties were diverse and disconnected and the negligence of each was without concert, if such several neglects concurred and united together in causing injury, the tort is equally joint, and the tort feasors are subject to a like liability." Matthews v. Delaware L. & W. R. Co., 56 N.J.L. 34, 36, 27 A. 919, 22 L.R.A. 261.[5]

In the instant case, plaintiffs contend that even though there may have been no concert of action between the defendants, the accumulated effect of their single acts (the pollution of the South River) created a single and indivisible injury.

■ In removal proceedings the allegations of a complaint are decisive as to the nature of the controversy in the absence of a showing that they are palpably without basis, or fraudulent.[6] See Hay v. May Dept. Store, 271 U.S. 318, 321, 327, 46 S.Ct. 498, 70 L.Ed. 965.

The affidavits filed on behalf of the plaintiffs indicate that they reasonably believed that the "single" injury of which they complained emanated from the plants of both of the corporate defendants and that they could not possibly attempt to divide or measure the individual responsibility of each. These allegations of the plaintiffs cannot be regarded as devoid of any merit or lacking in good faith. In their light, may we, at this stage of the proceedings, foreclose the plaintiffs from proceeding against the alleged tort-feasors in the man-

3. In New Jersey, there is no contribution even as between joint tort feasors. Malinauskas v. Pub. Service Interstate Transp. Co., 6 N.J. 269, 274, 275, 78 A. 2d 268.

4. Cf. Grillo v. Edison, 90 N.J.L. 680, 101 A. 171, where it was held that it would be no defense to an action for nuisance to show that a great many others are committing the same species of nuisance upon the stream for if a defendant's acts appreciably add to the pollution, they create a nuisance for which he would be liable. However, the court expressly noted that the question of the measure of damage was not involved in its ruling.

5. See also Bentley v. Halliburton Oil Well Cementing Co., 174 F.2d 788, at page 793:

"A plurality of negligent acts does not establish more than one cause of action so long as their effect is the violation of only one right by a single wrong. The mere multiplication of grounds of negligence does not result in multiple causes of action unless, under the facts, there has been a violation of multiple legal rights. The claim or cause of action, then, is not the negligent act or any group of facts, but the result of these in a legal wrong. Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 71 L.Ed. 1069."

6. Under such circumstances there are authorities that although the plaintiffs may have misconceived their cause of action and have no right to maintain it against the defendants jointly, that does not change the alleged joint cause of action into separable (separate and independent) controversies. See Bolstad v. Central Surety & Ins. Corp., 8 Cir., 168 F.2d 927, 930 and cases there cited.

ner in which they have elected? Is this federal court required to go further in this remand proceeding and try doubtful issues of law tendered by the complaint?

■ With reference to this problem the court in Bolstad v. Central Surety & Ins. Corp., 8 Cir., 168 F.2d 927, 930, stated:

"On the question of removal, it is unnecessary 'to consider more than whether there was a real intention to get a joint judgment, and whether there was a colorable ground for it shown * * *.' It is not necessary 'to decide whether a flaw could be picked in the declaration [complaint] on special demurrer.' Chicago R. I. & P. R. Co. v. Schwyhart, 227 U.S. 184, 194, 33 S.Ct. 250, 251, 57 L.Ed. 473; Pullman Co. v. Jenkins, 305 U.S. 534, 542, 543, 59 S.Ct. 347, 83 L.Ed. 334; Morris v. E. I. Du Pont de Nemours & Co., 8 Cir., 68 F.2d 788, 791. Doubtful issues of law and fact are to be decided by the court having jurisdiction to try the case, and are not to be determined in the removal proceedings. Morris v. E. I. Du Pont de Nemours & Co., supra, page 793 of 68 F.2d; Huffman v. Baldwin, supra, page 7 of 82 F. 2d. Whether, upon the facts alleged, the plaintiffs are entitled to maintain these actions is not a question affecting jurisdiction, but one relating to the merits of the cases. St. Louis & S. F. R. Co. v. McBride, 141 U.S. 127, 130, 11 S.Ct. 982, 35 L.Ed. 659."

We believe that this reasoning has application here where it is not patent that the facts pleaded in the complaint preclude the trial court from finding that there is but a single injury resulting from the concurrence of defendants' acts. The absence of a clear and definitive expression by the New Jersey courts on whether one or more injuries are occasioned by multiple pollutions and the manner in which their liability shall be measured in damages creates a doubtful issue of law and fact, not to be resolved in these remand proceedings but one which should be left for determination of the State courts.

■ The removing defendants further contend that the joinder of the indi-

vidual defendants, particularly Ardell Lowing, who is admittedly a citizen of New Jersey, was not done in good faith, but fraudulently for the purpose of defeating the jurisdiction of this court and to prevent removal. It is well recognized that the right of removal cannot be defeated by fraudulent joinder of a resident defendant having no real connection with the controversy. In such a case when a resident defendant is joined, the joinder, although fair upon its face, may be shown by the petition for removal to be only a sham or fraudulent device to prevent a removal, but the showing must consist of a statement of fact leading to that conclusion, apart from the pleader's deductions. Chesapeake & Ohio R. Co. v. Cockrell, 232 U.S. 146, 34 S.Ct. 278, 58 L.Ed. 544; Wecker v. Nat. Enameling & Stamping Co., supra. Where a plaintiff by motion to remand takes issue with such statements the removing defendant must take and carry the burden of proof in sustaining the charge of a fraudulent joinder. Wells v. Missouri Pac. R. Co., 8 Cir., 87 F.2d 579, 581.

The defendants submitted an affidavit by Mr. Lowing in which he alleges that he had no control over the design and construction of the plant and machines placed therein, or the method of operation, and that all these were established, controlled and maintained by the Schweitzer Company through its corporate officers and directors; that he had no authority to make any changes in machinery or appurtenances or methods of operation; that he personally did not cause any pollution of the river, or design any apparatus or machinery, or create any method, which would permit pollution of the river; that he did not direct any discharge of industrial waste or sewage into the river, and had no knowledge that industrial waste of the Schweitzer Company caused injury to persons or properties.

The plaintiffs, on the other hand, contend that Mr. Lowing as the plant manager of the Schweitzer Company managed, supervised and directed the actual operation of the plants; that he was informed by some of the plaintiffs of the condition allegedly

emanating from the Schweitzer plant, and that he admitted (which he denies) that the plant was in part responsible for the nuisance and that he would undertake measures to alleviate the condition. It was further alleged by plaintiffs that notwithstanding certain promises made to them by Mr. Lowing the nuisances complained of continued unabated.

■■■■■ If some reasonable basis exists for believing that there is a joint liability against resident and non-resident defendants, it is not a fraud upon the jurisdiction of the federal court to bring such a suit. Morris v. E. I. Du Pont de Nemours & Co., 8 Cir., 68 F.2d 788, 792. In the instant suit the joinder of such defendants would be a fraudulent device to prevent removal only if it were clear that under the applicable law the facts asserted by the plaintiffs as the basis for the liability of the resident defendant Lowing could not possibly create liability against him or against him and his co-defendant jointly, or if the allegations with respect to the resident defendant were shown to be so clearly false as to demonstrate that no factual basis exists for their assertion by the plaintiffs. Such findings would be equivalent to rendering a summary judgment in favor of the defendant Lowing. I am not persuaded that the defendants have sustained their burden of showing such fraudulent joinder.

To the extent that defendants have challenged the veracity of the plaintiffs' allegations we have issues of fact to be resolved upon trial of the merits and not a demonstration that the joinder is fraudulent. Furthermore, in none of the briefs submitted by defendants have we been directed to any New Jersey case which holds that as a matter of law the defendant Lowing as plant manager and superintendent could not be held liable or jointly liable with his company for the nuisance complained of in this suit. While citations have been submitted of holdings in other jurisdictions where a foreman or superintendent was held under particular factual conditions to have been joined fraudulently because no liability could be predicated upon the mere existence of his employment relationship, see, for example, Knight v. Atlantic Coast Line R. Co., 5 Cir., 73 F.2d 76, 99 A.L.R. 405; yet the few authorities that we have found dealing with the subject of pollution intimate that under certain circumstances, at least, a manager might be held responsible for such a nuisance. See 66 C.J.S., Nuisances, § 88, p. 847.[7] In Plymouth Consol. Gold Mining Co. v. Amador & S. Canal Co., 118 U.S. 264, 6 S.Ct. 1034, 30 L.Ed. 232, the complaint charged a corporation and certain individuals as its agents and servants, including the superintendent of its mines and mills, with polluting a stream of water belonging to the plaintiff and rendering it unfit for use, and seeking a remedy against the defendants jointly. The corporate defendants sought to remove the suit to a federal court upon the ground that a separable controversy existed between it and the plaintiffs and that the joinder of the individual defendants was made to prevent removal. In affirming the order to remand the court rejected both contentions. With reference to the first ground, the court stated:

"Upon the face of the complaint there is in the suit but a single cause of action, and that is the wrongful pollution of the water of the plaintiff's canal by the united action of all the defendants working together. Such being the case, the controversy was not separable for the purposes of a removal, even though the defendants answered separately, setting up separate defenses. Pirie v. Tvedt, 115 U.S. 41, 5 S.Ct. 1034, 1161, [29 L.Ed. 331]; Sloane v. Anderson, 177 U.S. [275] 278, 6 S.Ct. 730 [29 L.Ed. 899]." 118 U.S. at page 270, 6 S.Ct. at page 1037, 30 L.Ed. 232.

---

7. In Nunnelly v. Southern Iron Co., 1895, 94 Tenn. 397, 29 S.W. 361, 28 L.R.A. 421, cited in 66 C.J.S., Nuisances, § 88, p. 847, the general manager of a corporation, who was also its president, was held liable for damages caused to riparian proprietors by the long continued discharge of muddy water into a stream from ore washers operated by the company with his sanction and knowledge of the damage caused thereby.

Although the second ground was rejected on the basis that the removing defendant had failed to sustain the burden of proof as to fraudulent joinder the language of the court is most apposite:

"It is claimed, however, that as the answers show that the Plymouth Company is the real defendant, and the petition alleges that the others are nominal parties only, and joined with that company as 'sham defendants' to prevent a removal, the suit must be treated as in legal effect against the New York corporation alone, and therefore removable. So far as the complaint goes, all the defendants are necessary and proper parties. A judgment is asked against them all, both for an injunction and for money. Hayward and Hudson are admitted by the answer to be officers of the corporation, and Montgomery is its superintendent. These persons are all citizens of California, and amenable to process in that state. It is not denied that they are all actively engaged in the operations of the company; and Montgomery, *as the superintendent of its mines and mills, must necessarily be himself personally connected with the alleged wrongful acts for which the suit was brought.* It is undoubtedly true that if the company has a good defense to the action, that defense will inure to the benefit of all the other defendants; *but it by no means follows that if the company is liable, the other defendants may not be equally so, and jointly with the company.* It is possible, also, that the company may be guilty and the other defendants not guilty; but the plaintiff in its complaint says they are all guilty, and that presents the cause of action to be tried. Each party defends for himself, but until his defense is made out the case stands against him, and the rights of all must be governed accordingly." (Italics supplied.) 118 U.S. at page 270, 6 S.Ct. at page 1037, 30 L.Ed. 232.

In any event, at least it can be said that the liability of a plant manager and superintendent, for tort as alleged in this suit under New Jersey law is in doubt. Therefore the issue must be determined by the court having jurisdiction to try the case and not upon the motion to remand. Supra 105 F.Supp. 715; also Fitzgerald v. Perkins Oil Co. of Delaware, 8 Cir., 89 F.2d 98; Wells v. Mo. Pac. R. Co., supra.

In the light of the views expressed herein the question of the place of citizenship of the defendant Menzenwerth becomes of no moment and its resolution unnecessary.

An order to remand should be submitted in conformity herewith.