72 N.J. Super. 377 (1962)
178 A.2d 377
MONMOUTH CONSOLIDATED WATER COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
ILDON R. BLACKBURN, ET ALS., DEFENDANTS. MONMOUTH CONSOLIDATED WATER COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
CHARLES D. FLOCK, ET ALS., DEFENDANTS. MONMOUTH CONSOLIDATED WATER COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
GEORGE J. FREDERICKS, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 23, 1962.
*379 Messrs. Potter and Fisher, attorneys for plaintiff (Mr. Maurice A. Potter, appearing).
Messrs. Parsons, Canzona, Blair and Warren, attorneys for defendants (Mr. Theodore D. Parsons, appearing).
ASCHER, J.S.C. (temporarily assigned).
Awards in the above captioned cases were made by commissioners appointed by the court, R.S. 20:1-1 et seq., and in each suit appeals were taken to the Superior Court, in accordance with N.J.S.A. 20:1-16, by the plaintiff and the respective defendants, the reason being that none of the parties was satisfied, plaintiff contending that the awards were excessive, and defendants contending that they were inadequate and did not properly assess the damages for the loss and diminution of riparian rights of certain of defendants.
Plaintiff Monmouth Consolidated Water Company, a corporation of the State of New Jersey, hereinafter referred to as "water company," is a public utility corporation, duly *380 authorized and empowered to take lands and property for public use by virtue of R.S. 48:19-15. The following awards of damages were tendered and paid to the respective defendants, as indicated by the report of the commissioners, in accordance with the order of the Superior Court dated September 9, 1960:

 In the Blackburn et als. suit .................... $8,866.00
 In the Flock et ux, et als. suit ................. 10,267.40
 In the Fredericks suit ........................... 11,693.00
 ___________
 Total ..................................... $30,826.40

These appeals were consolidated for trial by the order of Judge Mariano, dated April 18, 1961, trial by jury being waived.
The trial of these cases was protracted and resulted in some 1221 pages of transcript. The takings by the water company involved lands running to the center of abutting streams and some portion of farm lands of the owners. At least two of the landowners were using water from the abutting streams for irrigation.
The basic issues, in connection with which voluminous testimony and evidence was adduced before this court, involved claims for the actual taking of lands, damage to the remainder after the taking, replacement cost for the use of water previously enjoyed, drainage rights, the possible cost of fencing, together with loss of access to the streams.
It is contended by the water company that in each case the lands taken were low, swampy areas, bordering headstream waters of Swimming River and low parts of steep slopes on the side of the ravines in which such streams run. In the Flock case there was a taking of 3.90 acres from a tract of 112.58 acres; in the Fredericks case there was a taking of 6.28 acres from a tract of 103.80 acres; in the Blackburn case there was a taking from two tracts: (1) 7.78 acres from a tract of 96.23 acres and (2) 0.28 acre from a tract of 65 acres.
*381 The general rule of damages in eminent domain proceedings is the difference between market value of the entire property before the taking and the market value of the property remaining after the taking. Implicit in this rule are included such damages as will be sustained by the landowner as a result of deprivation of use and such physical effects, produced by the taking, as the inconvenience of being cut off from its water supply, the cost of replacement of the use heretofore enjoyed, etc., to the end that the landowner is made whole.
The court has carefully considered the testimony of defendants Flock and Fredericks, whose properties were irrigated from the streams in question for some time prior to the takings (August 23, 1960). The takings were necessitated by the plan of the water company to construct a dam in Swimming River which would result in an average rise in the overall level to contour 35.
It appears from the testimony of defendant Flock that prior to the takings he operated an irrigating system, which cost some $3,800, for growing potatoes. Also shown were the requirements of the Flock farm for such irrigation, as well as that of the Fredericks farm.
It was further contended that the takings would constitute a complete barrier to the water; further, that the takings would include lands up to contour 40, constituting a 5' area or strip, preventing their access to the water. The same situation obtained as to the Blackburn property.
Expert testimony was elicited from Neal Munch, associated with the United States Department of Agriculture, Conservation Service, as to the necessity of installing irrigation ponds, and as to the amount of water needed for common irrigation on the Flock and Fredericks farms. He also testified as to the cost of such a holding pond on the Blackburn farm.
Further expert testimony was produced by the witness Roger Van Ness, of the Stotkoff Company, well driller, as to the cost of a well to produce water sufficient for the *382 needs of the Flock and Fredericks farms, and the cost of such construction and the equipment necessary to operate the same.
The element of fencing was testified to be necessary because of an increased exposure to all of the property abutting upon the contemplated reservoir, in which connection the water company stated it was not its intention to construct any fencing. The cost of the contemplated fencing was as follows:

 To defendant Flock ................................... $1,080
 To defendant Fredericks .............................. 1,552
 To defendant Blackburn ............................... 810

Defendants, with regard to the value of the lands taken and damage to the remainder, offered two expert real estate appraisers specializing in large tracts of rural property, in the persons of Mr. Paul R. Stryker and Mr. John D. Lazarus, both of whom were qualified. They testified at great length with particular reference to the sale of comparable properties of which they had personal knowledge and those of which they had no personal knowledge, but had acquired sufficient information of the transactions in the neighborhood to qualify them as experts on appraising the value of the lands subject to condemnation. The court indicated upon the record the comparables of plaintiff and defendants that would be considered, together with all the other evidence in the case, and considered the same in accordance with the statutory and decisional law. Essex County Park Comm. v. Brokaw, 107 N.J.L. 110 (E. & A. 1930).
The court inclines to the view that the value of the land taken, State by State Highway Com'r v. Jones, 27 N.J. 257 (1958), and all damages to the remainder from such taking, including such damage, if any, as will result from the deprivation of use of riparian rights and such other physical effects produced by the taking, the inconvenience of being cut off from its water supply, measured *383 by the rule of reasonable use, is the formula to be applied to the facts of this case. Meeker v. City of East Orange, 77 N.J.L. 623 (E. & A. 1909); Crane v. Borough of Essex Fells, 67 N.J. Super. 83 (1961).
Stated otherwise, the ultimate test is to restore the owner to his original position, and in this connection he is entitled to the full and perfect equivalent of the property taken and the damages inflicted by the taking; in other words, the loss caused to him. This means, substantially, that the owner shall be put in as good a position pecuniarily as he would have been if his property had not been taken. 18 Am. Jur., Eminent Domain, sec. 240, p. 874; Hutches v. Borough of Hohokus, 82 N.J.L. 140, 143 (Sup. Ct. 1911).
If the addition of the amount of the award to the market value of the remaining property exceeds the market value of the entire property before the taking, the owner would be unjustly enriched. If the sum is less, then he is not justly compensated. The market value is the primary criterion for determining just compensation. To this end the court has had the advantage of the expert opinions of the real estate appraisers, produced by both sides, and whose opinions form a basis for the court's determination, taking in account all elements which affect the market value before the taking, and all elements which affect it after the taking. Elements which do not affect the market value are not entitled to consideration and should be excluded. Special benefits must be taken into account. The properties under consideration, consisting of substantial tracts of land owned by each defendant, a major portion of which is fertile, upland ground, it is contended, have suitability for gentlemen's estates, or residential development, as the highest and best use for the purpose of this action; and it is contended by the water company that it is taking only a small portion of the lands, which is either low, swampy, or precipitous and wooded, along the banks of Swimming River, and that the land is not presently used for any purpose, has little *384 or no value for a residential development, farming or any other purpose, and therefore has little market value, and its taking has little effect upon the tract remaining.
As a general rule, this theory cannot be quarreled with. However, none of the property owners is desirous of selling his lands, or turning them into gentlemen's estates or residential developments. The particular acreage condemned, eliminating access to the abutting streams, the use of which constitutes a vital element in the operation of their properties as they presently desire them, must be evaluated.
There was evidence from defendants' real estate experts that the loss of riparian rights would reduce the value of the tract remaining, and they so testified to the remaining values, after the taking. In the Flock suit it was shown that commercial potato farming had been conducted for some period of time. A similar situation of farming, on a lesser scale, obtained with reference to the Fredericks property. It appears that in their capacity as riparian owners of land they had from time to time withdrawn water from the flow, Newark v. Chestnut Hill Land Co., 77 N.J. Eq. 23-28 (Ch. 1910), without any interference or deprivation of lower riparian owners. This right will be lost upon the riparian right's becoming the property of the water company, and it is claimed that such right will definitely have an effect upon the market value of the property owners' remaining lands, as access to the flow would necessitate trespassing upon the lands of the water company. Therefore, the court must make its determination without segregation or separate itemization of damages insofar as they affect the market value of the remaining area, and such damages cannot exceed the amount which would be found due upon application of the before-and-after rule.
This court inclines to the view that defendants are entitled to have the element of the loss of use of the flow for the purpose of irrigation considered, also their loss of access to the water, in determining the market value of the *385 remaining property after the taking, together with the element of reasonable necessity of common irrigation requirements necessary to the operation of their farmlands.
The element of fencing, while testified to, does not appear, from the evidence adduced, to be necessary to the continued operation of the defendants' lands, and is therefore not considered as an element affecting value.
The court has considered the testimony of plaintiff's experts, and in this connection it must be kept in mind that witness Roche's experience is somewhat limited; that he had previously been employed by Paul Stryker, the expert who testified on behalf of defendants; and that the first appraisal Roche ever made was in November 1960.
The other appraiser for the water company, Nicholas Friday, did not view the premises until July 17, 1961, a week prior to the start of the trial; also, he had never sold any farmland in Atlantic or Holmdel Townships; and the comparables used were given to him by Mr. Roche and Mr. Appleby. Further, that in appraising, particularly the Blackburn property, he looked at it from the other side of the creek, as it was easier that way. With regard to the Fredericks property, he indicated that he did not know that it ran to the center of Yellowbrook, nor where it ran to, nor did he think that the Blackburns owned to the brook. It may be discreetly said that his testimony was not too persuasive.
Of necessity, reliance must be placed upon the testimony of the real estate appraisers, and while the court is not bound by such testimony, it must be considered with particularity as to their skill, training and experience, and if found to be credible, such testimony is to be used to assist the court in arriving at a just and correct determination.
The court, after considering and weighing all the evidence and testimony, together with the various exhibits, and having viewed the properties involved, and after having applied the rule heretofore mentioned to the facts of these *386 cases, makes specific findings as follows, in each of the cases:

BLACKBURN: PARCEL #1, NORTH SIDE OF PHALANX ROAD.
Taking: .......... 7.78 acres
Remainder: ....... 88.45 acres

(Both plaintiff's and defendants' appraisers agree as to the value per acre before taking.)

Total acreage:
 96.23 @ $1,200 before taking . $115,476.00
 88.45 @ $1,100 after taking .. 97,295.00
 ____________
 Damage ................... $18,181.00
 BLACKBURN: PARCEL #2.
Taking: .......... 0.28 acres
Remainder: ....... 64.72 acres

(Appraisers' valuations: $1,100 per acre, there being no damage on account of severance.)

Total acreage:
 65 @ $1,100 before taking . $71,500.00
 64.72 @ $1,100 after taking .. 71,192.00
 ___________
 Damage ................... $308.00
 FLOCK.
Taking: ......... 3.90 acres
Remainder: ...... 108.68 acres

(Plaintiff's and defendants' experts agree on $1,200 per acre, before taking.)

Total acreage:
 112.58 @ $1,200 before taking . $135,096.00
 108.68 @ $ 963 after taking .. 104,658.84
 ___________
 Damage ................... $30,437.16

*387
 FREDERICKS.
Taking: .......... 6.28 acres
Remainder: ....... 97.52 acres

(Plaintiff's and defendants' experts vary as to value before taking. Court has averaged the value per acre.)

Total acreage:
 103.80 @ $1,200 before taking . $124,560.00
 97.52 @ $1,100 after taking .. 107,272.00
 ___________
 Damage ................... $17,288.00

A form of judgment consistent with the views herein expressed will be submitted and consented to as to form.